# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DOCKETING STATEMENT--CIVIL/AGENCY CASES

**Directions:** Counsel must make a **docketing statement (civil/agency) filed** entry in CM/ECF within 14 days of docketing of the appeal, or within the due date set by the clerk's docketing notice, whichever is later. File with the entry the (1) docketing statement form with any extended answers and (2) any transcript order form. Parties proceeding pro se are not required to file a docketing statement. Opposing counsel who finds a docketing statement inaccurate or incomplete may file any objections within 10 days of service of the docketing statement using the ECF event-**docketing statement objection/correction filed**.

| | |
|---|---|
| **Appeal No. & Caption** | 24-1650 (L), Appalachian Voices v FERC c/w 24-1770 et al |
| **Originating No. & Caption** | RM21-17 Building for the Future Through Electric Regional etc |
| **Originating Court/Agency** | Federal Energy Regulatory Commission |

| **Jurisdiction** (answer any that apply) | | |
|---|---|---|
| Statute establishing jurisdiction in Court of Appeals | 16 USC § 825l(b) | |
| Time allowed for filing in Court of Appeals | 60 days | |
| Date of entry of order or judgment appealed | 5/13/2024; 7/15/2024 | |
| Date notice of appeal or petition for review filed | 7/15/2024 | |
| If cross appeal, date first appeal filed | N/A | |
| Date of filing any post-judgment motion | N/A | |
| Date order entered disposing of any post-judgment motion | N/A | |
| Date of filing any motion to extend appeal period | N/A | |
| Time for filing appeal extended to | N/A | |
| Is appeal from final judgment or order? | ⦿ Yes | ○ No |
| If appeal is not from final judgment, why is order appealable? | | |

| **Settlement** (The docketing statement is used by the circuit mediator in pre-briefing review and mediation conducted under Local Rule 33. Counsel may make a confidential request for mediation by calling the Office of the Circuit Mediator at 843-731-9099.) | | |
|---|---|---|
| Is settlement being discussed? | ○ Yes | ⦿ No |

1/28/2020 SCC

| **Transcript** (transcript order must be attached if transcript is needed and not yet on file) | | |
|---|---|---|
| Is transcript needed for this appeal? | ○ Yes | ◉ No |
| Has transcript been filed in district court? | ○ Yes | ◉ No |
| Is transcript order attached? | ○ Yes | ◉ No |

| **Case Handling Requirements** (answer any that apply) | |
|---|---|
| Case number of any prior appeal in same case | None |
| Case number of any pending appeal in same case | All consolidated here under 24-1650(L) |
| Identification of any case pending in this Court or Supreme Court raising similar issue | |
| | If abeyance or consolidation is warranted, counsel must file an appropriate motion. |
| Is expedited disposition necessary? | ○ Yes    ◉ No |
| | If yes, motion to expedite must be filed. |
| Is oral argument necessary? | ◉ Yes    ○ No |
| Does case involve question of first impression? | ◉ Yes    ○ No |
| Does appeal challenge constitutionality of federal or state statute in case to which federal or state government is not a party | ○ Yes    ◉ No |
| | If yes, notice re: challenge to constitutionality of law must be filed. |

| **Nature of Case** (Nature of case and disposition below. Attach additional page if necessary.) |
|---|
| Petitioners, the Louisiana Public Service Commission (LPSC) and the Mississippi Public Service Commission (MPSC) retail regulators of electric utilities in Regional Transmission Organizations (RTOs) seek review of Federal Energy Regulatory Commission (FERC) rulemaking Order No. 1920, which fundamentally reshapes transmission planning, finds that long-standing planning practices of transmission providers are unjust and unreasonable, and requires all transmission providers to plan based upon detailed new FERC requirements designed to achieve predestined results in a manner that exceeds its authority and usurps state authority.  It requires all transmission providers to take major steps to comply with new long range transmission planning requirements, using FERC-defined metrics and evaluation requirements favoring remote generation without adequate evidence of analysis that the existing paradigms are unjust and unreasonable.  FERC also exceeded its authority in adopting new cost allocation requirements.  The LPSC and MPSC intervened and filed comments in the FERC proceeding below and timely sought rehearing of the FERC's Final Rule. Rehearing requests were denied by operation of law on 7/15/2024. The LPSC and MPSC sought review at the 5th Circuit, and that petition was transferred to the Fourth Circuit (24-1770) and consolidated under the lead docket herein 24-1650, along with other dockets. |

| **Issues** (Non-binding statement of issues on appeal. Attach additional page if necessary) |
|---|
| 1. The Final Rule intrudes upon the primary jurisdiction and authority of the States over the selection and approval of generation resources. As a result, the Final Rule is in error, is arbitrary and capricious, and not based on reasoned decision-making, in violation of the FPA, in violation of principles of federalism, and results in unjust, unreasonable and unduly discriminatory rates. Generating resource choice is within the States' authority and jurisdiction. No statute, including the FPA, gives the Commission the ability to favor one form of generation over another and thus engage in wide-scale public policy reform. The FPA provides the Commission with jurisdiction to regulate "the transmission of electric energy in interstate commerce" and "the sale of electric energy at wholesale in interstate commerce." The FPA is primarily, and perhaps exclusively, an economic regulation statute. Section 205 of the FPA requires the Commission to ensure that "[a]ll rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of the Commission" be "just and reasonable." Further, Section 215(i)(3) of the FPA reserves jurisdiction over the "safety, adequacy, and reliability of electric service" to the States.<br><br>ADDITIONAL ISSUES INCLUDED ON ATTACHED PAGE |

| **Adverse Parties** (List adverse parties to this appeal and their attorneys; provide party's address if the party is not represented by counsel. Attach additional page if necessary.) ||
|---|---|
| Adverse Party:<br><br>Attorney:<br>Address:<br><br><br><br>E-mail:<br><br>Phone: | Adverse Party:<br><br>Attorney:<br>Address:<br><br><br><br>E-mail:<br><br>Phone: |
| **Adverse Parties (continued)** ||
| Adverse Party:<br><br>Attorney:<br>Address:<br><br><br><br>E-mail:<br><br>Phone: | Adverse Party:<br><br>Attorney:<br>Address:<br><br><br><br>E-mail:<br><br>Phone: |

| **Appellant** (Attach additional page if necessary.) ||
|---|---|
| Name: Federal Energy Regulatory Comm.<br><br>Attorney: Robert Solomon<br>Address: 888 First St. NE.<br>　　　　　Room 9A-01<br>　　　　　Washington, DC 20426<br><br>E-mail: robert.solomonferc.gov<br><br>Phone: 202-502-8257 | Name:<br><br>Attorney:<br>Address:<br><br><br><br>E-mail:<br><br>Phone: |
| **Appellant (continued)** ||
| Name:<br><br>Attorney:<br>Address:<br><br><br><br>E-mail:<br><br>Phone: | Name:<br><br>Attorney:<br>Address:<br><br><br><br>E-mail:<br><br>Phone: |

Signature: /s/ Noel J. Darce / /s/ William Booth　　Date: 8/29/2024

Counsel for: Louisiana Public Service Commission/ Mississippi Puclic Serv. Com

**Certificate of Service** *(required for parties served outside CM/ECF)*: I certify that this document was served on ___N/A___ by ☐ personal delivery; ☐ mail; ☐ third-party commercial carrier; or ☐ email (with written consent) on the following persons at the addresses or email addresses shown:

|  |  |
|---|---|
|  |  |

Signature: /s/ Noel J. Darce　　Date: 8/29/2024

# ISSUES (CONTINUED)

1. (Continued) The Final Rule usurps the States' authority by adopting transmission planning requirements that dictate the choice of generating resources and then determine what planning and benefit metrics will lead to uneconomic transmission build-out to support those resources. These planning requirements would dramatically increase costs imposed on consumers while potentially jeopardizing the reliability of the grid. The Final Rule exceeds the Commission's authority under the FPA by making FERC the national Integrated Resource Plan ("IRP") designer over generation mix.

2. The Final Rule violates the "major questions" doctrine that reserves to congressional acts major changes in public policy and does not allow administrative agencies, like FERC, by a rulemaking to make a major change to determine the generation types that should be favored over others in making transmission decisions. FERC, in Order 1920, has exceeded its authority over interstate transmission by favoring the transmission of one type of energy generation over other generation resources- that is, favoring energy produced from remote generation. The adoption of biased rules will result in billions of dollars in transmission investment to move the energy produced by those remote generators and shifting the costs of those resources from the developers of generation located in some States to load and electric consumers located in other States. In addition, to the extent that Congress has acted in this area, it limits the authority of FERC and the DOE to the NIETC process

3. The Final Rule exceeds the Commission's authority under the FPA. FERC has failed to identify sufficient evidence to demonstrate that: (i) the current long term and other transmission planning processes for all RTOs/ISOs and other transmission providers are unjust and unreasonable, and (ii) the replacement processes are unjust and unreasonable, or unduly discriminatory. There is no analysis of the justness and reasonableness of the existing generator interconnection process, local transmission planning processes, or transmission provider short- or long-term transmission planning processes. The rates that will result from the Final Rule will be unjust, unreasonable and unduly discriminatory. Order 1920 will lead to enormous and unjustified increases in transmission rates, in violation of FERC's principal statutory obligation; to protect ratepayers from excessive rates.

4. The Final Rule is in error because it mandates the use of transmission planning criteria that marginalizes the input from Relevant Electric Retail Regulatory Authority ("RERRA" or "RERRAs") in transmission planning, favors generation selected by specific customers (*e.g.,* large corporations) and will result in unreasonable increased costs for consumers. As a result, the Final Rule usurps the role of the States in transmission planning and violates the FPA. Order 1920 requires long-term planning of at least 20-years and use of seven categories of factors to determine transmission solutions and selection of long-term facilities for cost allocation. Those factors include: (2) tribal, state and local laws on decarbonization and electrification and (7) utility and corporate commitments/goals and tribal, state and local policy goals that affect long term transmission planning needs. The requirement to plan, build and cost allocate to accommodate the state, local and corporate goals and commitments of some States over other States is unjust, unreasonable, unduly discriminatory, and arbitrary and capricious. It requires that plans and goals of some States, tribes, local governments, and private companies to override the plans and goals of other States, tribes, local governments, and private companies and to charge the latter group for the privilege.

5. The Final Rule is in error and will result in unjust and unreasonable rates because it adopts seven required factors and seven benefit metrics to evaluate the proposed long-term transmission facilities. Mandatory use of these factors and benefit metrics, because they favor some resources over others, are unjust and unreasonable also because they overlap and will double-count or exaggerate the potential benefits. Further, there is insufficient evidence and analysis supporting the conclusion that use of these factors and metrics will result in cost-effective solutions.

6. The Final Rule is in error and will result in unjust and unreasonable rates because it allows transmission providers to require a portfolio approach in evaluating the use of long-term transmission facilities. Use of portfolios allows for the inclusion of projects that lack positive benefits within a portfolio of projects that are beneficial. Long-term transmission projects should be evaluated individually, and if they provide no net positive benefits, should not be built.

7. The Final Rule is in error because it adopts a cost allocation process that is unjust, unreasonable and arbitrary and capricious. The Final Rule's state agreement process is not reasonable because, among other reasons, it does not provide adequate time for States to agree to a cost allocation methodology. In

addition, the requirement of the Final Rule for an *ex ante* cost allocation will eviscerate the effectiveness of a state agreement cost allocation process. The six-month engagement period for establishing a state agreement process is insufficient to allow multiple States that will need months to negotiate with other States. States likely also will need a state process to allow due process to approve the state agreement process. Further, the mere existence of an *ex ante* default cost allocation will incent RERRAs to dissent in the state agreement process, if that *ex ante* allocation is more favorable to a particular RERRA. In addition, the Final Rule does not require the transmission providers to adopt the state agreement process. If a state Agreement process is adopted by the appropriate States, that agreement should be binding and subject only to FERC approval. The Final Rule is in error also because it requires that transmission projects be built to accommodate the policies of some States, utilities, and customers, while ignoring others, and allows the shifting of costs to transmit energy from generators to load. As a result, it usurps individual State authority. The Final Rule will result in unjust and unreasonable rates, in violation of the FPA, because it creates a blending of benefits allowing public policy driven by some States, local, and corporate plans to be favored over those of other States, after being mixed with reliability and economic benefits for planning and cost allocation purposes, that are then allocated broadly with costs shifted to consumers who do not share in those public policies, support those projects, or consent to share the costs.

8. The Final Rule is in error, usurps State authority and will result in unjust and unreasonable rates because it requires local transmission to be evaluated for "right-sizing" to increase its transfer capability purportedly to be more economically efficient. Essentially this requirement will allow developers and others to hijack the local transmission planning processes and to contest local transmission projects by urging that they need to be higher voltage, and longer, resulting in more expense for local ratepayers.

9. The Final Rule usurps State authority by subjecting the state agreement approach to an RTO's decision whether to include such an approach in its tariff. Transmission costs are ultimately recovered through state-jurisdictional retail rates. If States agree to a specific cost allocation among themselves, then no other proposed cost allocation should apply.

10. The Final Rule is in error because it fails to eliminate Construction Work in Progress ("CWIP") as an incentive. There was insufficient evidence and

      rationale expressed in the record to retain the requirement that ratepayers bear the financial risks associated with transmission construction. This issue should only be deferred if the Commission establishes in this Final Rule a docket to comprehensively consider those incentives on a generic basis.

11. The Final Rule is in error, and it will result in unjust and unreasonable rates because it requires that interconnection and regional planning be coordinated in violation of cost causation precedent. This is merely another way to shift generator interconnection costs from generators to load.

12. Order 1920 violates the Administrative Procedures Act, including the notice and comment requirement and due process because the Final Rule completely changed the role of Relevant State Entities in cost allocation as described in the NOPR, and made other significant changes without republishing the rule. The Final Rule is in essence a new rule that requires new opportunities for comment and input and, therefore, parties did not have an opportunity to comment on the Final Rule's proposal.