**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

Nos. 24-1650, 24-1748, 24-1756, 24-1758, 24-1760, 24-1765, 24-1770, 24-1785, 24-1792, 24-1804, 24-1857, 24-1862, 24-1867, 24-1876, 24-1885, 24-1887, 24-1979, 24-1991, 24-2162, 24-2163, 25-1073, 25-1080, 25-1197, 25-1349
(consolidated)

APPALACHIAN VOICES, ET AL.,
*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent*,

ENTERGY OPERATING COMPANIES and ENTERGY SERVICES, LLC, ET AL.,
*Intervenors*.

ON PETITION FOR REVIEW OF ORDERS OF THE
FEDERAL ENERGY REGULATORY COMMISSION, DKT. NO. RM21-17

_____

# REPLY BRIEF OF THE TRANSMISSION OWNER PETITIONERS

_____

**(counsel listed inside)**

John Lee Shepherd, Jr.
Nathan R. Menard
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave, NW
Suite 900
Washington, DC 20037
(202) 955-1500
jshepherd@hunton.com
nmenard@hunton.com

*Counsel for the Southwest Power Pool Transmission Owner Group*

Carrie L. Bumgarner
Senior Counsel
American Electric Power Service Corporation
1 Riverside Plaza
Columbus, OH 43215
(614) 716-2941
clbumgarner@aep.com

*On behalf of American Electric Power Service Corporation*

Denise Buffington
Senior Director Federal Regulatory Affairs
Evergy, Inc.
1200 Main Street
Kansas City, MO 64105
(816) 556-2683
denise.buffington@evergy.com

*On behalf of the Evergy Companies*

Timothy T. Mastrogiacomo
Vice President, Federal Regulatory, Legal, and Policy
Xcel Energy Services Inc.
701 Pennsylvania Avenue, NW, Ste. 250
Washington, DC 20006
(202) 661-4481
tim.t.mastrogiacomo@xcelenergy.com

*On behalf of Southwestern Public Service Company*

Steven M. Nadel
Senior Counsel
PPL Services Corporation
645 Hamilton Street, Suite 700
Allentown, PA 18101
(610) 774-4775
SMNadel@pplweb.com

John Longstreth
Donald A. Kaplan
Chimera N. Thompson
K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20006
(202) 778-9000
john.longstreth@klgates.com
don.kaplan@klgates.com
chimera.thompson@klgates.com

Michelle S. Kallen
William M. Keyser
Steptoe LLP
1330 Connecticut Avenue N.W.
Washington, DC 20036
(202) 429-8186
mkallen@steptoe.com
wkeyser@steptoe.com

*Counsel for PPL Electric Utilities Corporation*

iii

Molly Suda
Associate General Counsel
Duke Energy Corporation
1301 Pennsylvania Ave. NW,
Suite 200
Washington, DC 20004
(202) 824-8011
molly.suda@duke-energy.com

*Counsel for Duke Energy*

William M. Rappolt
Assistant General Counsel, FERC
AES US Services LLC
4300 Wilson Blvd
Arlington, VA 22203
(703) 682-6337
william.rappolt@aes.com

*Counsel for The Dayton Power and Light Co.*

Gary E. Guy
Assistant General Counsel
Exelon Corporation
701 Ninth Street, N.W., Suite 9426
Washington, DC 20068
(301) 956-6754
gary.guy@exeloncorp.com

*Counsel for Exelon Corporation, Atlantic City Electric Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, Delmarva Power & Light Company, PECO Energy Company, and Potomac Electric Power Company*

iv

William H. Baxter II
Assistant General Counsel
Dominion Energy Services, Inc.
120 Tredegar Street, Riverside 6th Floor
Richmond, VA 23219
(804) 819-2458
william.h.baxter@dominionenergy.com

*Counsel for Dominion Energy Services, Inc., on behalf of its affiliate Virginia Electric and Power Company*

David M. Gossett
Davis Wright Tremaine LLP
1301 K Street, NW
Suite 500 East
Washington, DC 20005
(202) 973-4200
davidgossett@dwt.com

Sanford I. Weisburst
Quinn Emanuel Urquhart &
Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
sandyweisburst@quinnemanuel.com

*Counsel for the FirstEnergy Transmission Companies*

Carrie L. Bumgarner
Senior Counsel
American Electric Power Service Corporation
1 Riverside Plaza
Columbus, OH 43215
(614) 716-2941
clbumgarner@aep.com

*Counsel for American Electric Power Service Corporation on behalf of its affiliates Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Wheeling Power Company, AEP Appalachian Transmission Company, Inc., AEP Indiana Michigan Transmission Company, Inc., AEP Kentucky Transmission Company, Inc., and AEP Ohio Transmission Company, Inc.*

v

Daniel E. Frank
Allison E.S. Salvia
Eversheds Sutherland (US) LLP
700 Sixth St., N.W., Suite 700
Washington, DC  20001-3980
(202) 383-0100
danielfrank@eversheds-sutherland.com
allisonsalvia@eversheds-sutherland.com

*Counsel for East Kentucky Power Cooperative, Inc.*

Donald A. Kaplan
K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20006
(202) 778-9000
don.kaplan@klgates.com

*Counsel for Duquesne Light Company*

Joshua A. Kirstein
Paul Savage
Consolidated Edison Company of
New York, Inc.
4 Irving Place, 18th Floor
New York, NY 10003
(929) 656-5971
kirsteinj@coned.com
savagep@coned.com

*Counsel for Rockland Electric Company*

Wendy N. Reed
Matthew J. Binette
Abraham F. Johns III
WRIGHT & TALISMAN, P.C.
1200 G Street N.W., Suite 600
Washington, DC  20005-3898
(202) 393-1200
reed@wrightlaw.com
binette@wrightlaw.com
johns@wrightlaw.com

*Counsel for the MISO Transmission Owners:*
*Ameren Services Company, as agent for Union Electric Company d/b/a Ameren Missouri, Ameren Illinois Company d/b/a Ameren Illinois and Ameren Transmission Company of Illinois; American Transmission Company LLC; Central Minnesota Municipal Power Agency; Cooperative Energy; Dairyland Power Cooperative; Duke Energy Business Services, LLC for Duke Energy Indiana, LLC; Great River Energy; Indiana Municipal Power Agency; Indianapolis Power & Light Company d/b/a AES Indiana; Lafayette Utilities System; MidAmerican Energy Company; Minnesota Power (and its subsidiary Superior Water, L&P); Montana-Dakota Utilities Co.; Northern Indiana Public Service Company LLC; Northern States Power Company, a Minnesota corporation, and Northern States Power Company, a Wisconsin corporation, subsidiaries of Xcel Energy Inc.; Northwestern Wisconsin Electric Company; Otter Tail Power Company; Prairie Power, Inc.; Southern Indiana Gas & Electric Company (d/b/a CenterPoint Energy Indiana South); Southern Minnesota Municipal Power Agency; and Wolverine Power Supply Cooperative, Inc.*

March 13, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ix

INTRODUCTION .............................................................................................1

ARGUMENT .....................................................................................................2

I.     THE RULE VIOLATES FPA SECTION 206 ..................................................2

II.    THE INCLUSION REQUIREMENT VIOLATES FPA SECTION 205 .......7

III.   THE CONSULTATION REQUIREMENT VIOLATES FPA SECTION
       205 ..........................................................................................................12

IV.    THE REQUIREMENTS VIOLATE THE FIRST AMENDMENT .............18

       A.     The First Amendment Applies to Public Utility Filings at FERC ......18

       B.     Strict Scrutiny Applies .........................................................................20

       C.     The Requirements Violate the First Amendment Under Any
              Level of Scrutiny ...............................................................................22

              1.     Strict Scrutiny ........................................................................22

              2.     Intermediate Scrutiny.............................................................23

              3.     The *Zauderer* Test..................................................................23

V.     THE RULE ARBITRARILY AND UNREASONABLY COMPELS
       PUBLIC DISCLOSURE OF CONFIDENTIAL INFORMATION..............25

CONCLUSION ...................................................................................................28

viii

## TABLE OF AUTHORITIES

**CASES**                                                **PAGE(S)**

*American Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749 (9th Cir. 2019) .................................................................24

*Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595 (2021)..............19, 22

*Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571 (1981)......................................15

*Atlantic City Electric Co. v. FERC*, 295 F.3d 1 (D.C. Cir. 2002) ...............................................2, 3, 8, 9, 14, 15, 16

*Atlantic City Electric Co. v. FERC*, 329 F.3d 856 (D.C. Cir. 2003) ......................2, 9

*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983) ..................................20

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024).........................................19

*California Chamber of Commerce v. Council for Education & Research on Toxics*, 29 F.4th 468 (9th Cir. 2022) ...............................................24

*California Public Utilities Commission v. FERC*, 879 F.3d 966 (9th Cir. 2018) .......................................................................................................12

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980)........................................................................24

*City of Cleveland v. FERC*, 773 F.2d 1368 (D.C. Cir. 1985).................................11

*City of Cleveland v. FPC*, 525 F.2d 845 (D.C. Cir. 1976) ....................................15

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961)....................................................................................21

*Electric District No. 1 v. FERC*, 774 F.2d 490 (D.C. Cir. 1985) ..........................10

*Emera Maine v. FERC*, 854 F.3d 9 (D.C. Cir. 2017) ...................................2, 3, 5, 6

*Farmers Union Central Exchange, Inc. v. FERC*, 734 F.2d 1486 (D.C. Cir. 1984) ..............................................................................................27

*FERC v. Electric Power Supply Ass'n*, 577 U.S. 260 (2016)...................................6

*Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263 (5th Cir. 2024).......................24

*Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264 (4th Cir. 2013)....................................20

*International Transmission Co. v. FERC*, 988 F.3d 471 (D.C. Cir. 2021) ....................................................................................................................2

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ....................................6

*Massachusetts v. FERC*, 729 F.2d 886 (1st Cir. 1984).................................................8

*Maryland Shall Issue, Inc. v. Anne Arundel County*, 91 F.4th 238 (4th Cir. 2024) .................................................................................................21

*MISO Transmission Owners v. FERC*, 819 F.3d 329 (7th Cir. 2016)........................7

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto Insurance Co.*, 463 U.S. 29 (1983)...................................................................27

*National Electric Manufacturers Ass'n v. Sorrell*, 272 F.3d 104 (2d. Cir. 2001) ...................................................................................................23, 24

*National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ...................................................................................................24, 25

*NRG Power Marketing, LLC v. FERC*, 862 F.3d 108 (D.C. Cir. 2017)...................16

*New York State Restaurant Ass'n v. New York City Board of Health*, 556 F.3d 114 (2d. Cir. 2009) ...........................................................................21, 23

*Oklahoma Gas & Electric Co. v. FERC*, 827 F.3d 75 (D.C. Cir. 2016) ...................7

*Pacific Gas & Electric Co. v. Public Utilities Commission of California*, 475 U.S. 1 (1986)..............................................................................18, 20, 24

*Papago Tribal Utility Authority v. FERC*, 723 F.2d 950 (D.C. Cir. 1983) ....................................................................................................................3

*PJM Power Providers Group v. FERC*, 88 F.4th 250 (3d. Cir. 2023) ......................8

x

*Scahill v. District of Columbia*, 909 F.3d 1177 (D.C. Cir. 2018)..........................19

*South Carolina Public Service Authority v. FERC*, 762 F.2d 41 (D.C. Cir. 2014) ...........................................................................................5, 6

*Stokes v. Stirling*, 64 F.4th 131 (4th Cir. 2023) .......................................................23

*United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 350 U.S. 332 (1956)....................................................................................................14

*United States v. Sindel*, 53 F.3d 874 (8th Cir. 1995) ...............................................19

*West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943)....................................................................................................19

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)..........................21

**ADMINISTRATIVE CASES**

*Building for the Future Through Electric Regional Transmission Planning and Cost Allocation*, Order No. 1920, 187 FERC ¶ 61,068 (2024) ...................................................................................1, 5, 9

*Building for the Future Through Electric Regional Transmission Planning and Cost Allocation*, Order No. 1920-A, 189 FERC ¶ 61,126 (2024) ...............................................................................1, 4, 11, 13

*Building for the Future Through Electric Regional Transmission Planning and Cost Allocation*, Order No. 1920-B, 191 FERC ¶ 61,026 (2025) ...........................................................................1, 12, 18, 19, 22

*Cost Recovery Mechanisms for Modernization of Natural Gas Facilities*, 151 FERC ¶ 61,047 (2015)..........................................................17

*Entergy Services*, 104 FERC ¶ 61,336 (2003) .......................................................17

*Kern River Gas Transmission Co.*, 142 FERC ¶ 61,132 (2013) .............................10

*Midwest Independent Transmission System Operator, Inc.*, 122 FERC ¶ 61,084 (2008) ....................................................................................9

*PJM Interconnection, L.L.C.*, 117 FERC ¶ 61,331 (2006)......................................10

*PJM Interconnection, L.L.C.*, 119 FERC ¶ 61,318 (2007) ........................................10

*System Energy Resources, Inc.*, 168 FERC ¶ 63,001 (2019) ...................................17

**STATUTES**

Energy Policy Act of 2005, Pub. L. 109-58, 119 Stat. 594 (Jan. 7, 2005) ........................................................................................................11

Federal Power Act (FPA), 16 U.S.C. §§ 791-825r

    FPA section 205, 16 U.S.C. § 824d ................................................1, 13

    FPA section 206, 16 U.S.C. § 824e .......................................1, 2, 3, 4

Infrastructure Investment and Jobs Act, Pub. L. 117-58, 135 Stat. 429 (Nov. 15, 2021) ..............................................................................12

**REGULATIONS**

18 C.F.R. § 385.211 ............................................................................12

18 C.F.R. § 385.214 ............................................................................12

xii

## INTRODUCTION

The transmission planning mandates imposed by the Federal Energy Regulatory Commission ("FERC") in Order No. 1920 and its sequels (collectively, "Orders" or "the Rule")[1] violate public utilities' statutory filing rights under Federal Power Act ("FPA") section 205, 16 U.S.C. § 824d, by allowing states to commandeer public utility rate filings and violate the First Amendment by compelling utilities to communicate policy positions with which they disagree. Specifically, FERC's Consultation and Inclusion Requirements (together, the "Requirements") first direct transmission-owning public utilities to consult with state regulators as a precondition to filing long-term transmission cost allocation proposals with FERC, and then force public utilities to submit and promote state-designed tariff provisions that utilities oppose. FERC imposed these unlawful Requirements in violation of the two-step rate modification process required by FPA section 206, 16 U.S.C. § 824e, and directed utilities to publish confidential information without a reasoned explanation in violation of the Administrative Procedure Act ("APA"). These errors require vacatur.

---

[1] *Building for the Future Through Electric Regional* Transmission *Planning and Cost Allocation*, Order 1920, 187 FERC ¶ 61,068, JA0615, *order on reh'g*, Order 1920-A, 189 FERC ¶ 61,126 (2024), JA1979, *reh'g denied*, Order 1920-B, 191 FERC ¶ 61,026 (2025), JA2798.

FERC minimizes the Requirements as "narrow aspects" of its Rule, and claims its mandates were intended to "balance" competing interests over long-term transmission planning and improve FERC's administrative efficiency. FERC Br. 68, 191. But no "balance" of competing interests can deprive Transmission Owners of statutory and constitutional rights. Affirming FERC's unprecedented Requirements as mere "compliance" burdens would not only violate FPA section 205 and the First Amendment, but would also provide FERC with a template to trample Transmission Owners' rights in any future proceeding under FPA section 206. Like prior unlawful FERC orders, the Rule "is merely a regulation," and therefore "cannot be the basis for denying the petitioners their rights provided by a statute enacted by both houses of Congress and signed into law by the president." *Atl. City Elec. Co. v. FERC*, 295 F.3d 1, 11 (D.C. Cir. 2002) (*Atlantic City I*), *enforced*, *Atl. City Elec. Co. v. FERC*, 329 F.3d 856 (D.C. Cir. 2003) (*Atlantic City II*). Nor can it be a basis for denying their rights under the First Amendment.

## ARGUMENT

## I. THE RULE VIOLATES FPA SECTION 206

FERC's substantive errors are heralded by a critical procedural error. FPA section 206 requires "FERC to show that an existing rate is unlawful before ordering a new rate." *Int'l Transmission Co. v. FERC*, 988 F.3d 471, 485 (D.C. Cir. 2021) (quoting *Emera Maine v. FERC*, 854 F.3d 9, 24 (D.C. Cir. 2017)); *see* 16 U.S.C.

§ 824e(a) (requiring FERC to find an existing rate unlawful before "determin[ing] the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed").  When, as here, FERC bypasses FPA section 206 step one in its haste to impose preferred rate changes under step two, its order must be set aside.  For example, FERC's Opinion 531 was vacated because it "effectively eliminated section 206's statutory directive that existing rates be found unlawful before FERC has the authority to change those rates." *Emera Maine*, 854 F.3d at 25-27.  The instant Rule repeats that misguided approach.

FERC improperly "relied on its assumption that" any rate other than its preferred replacement rate was "*per se* unlawful in a section 206 proceeding." *Id.* at 26.  FERC's determination that its replacement rate is just and reasonable "did not amount to a finding that every other rate … was not." *Id.* (quoting *Papago Tribal Util. Authority v. FERC*, 723 F.2d 950, 957 (D.C. Cir. 1983)).  Here, FERC failed to "mak[e] an explicit finding that the existing [rate] was *unlawful* before it was authorized to set a new *lawful* [rate]." *Id.* (citing *Atlantic City I*, 295 F.3d at 9-10).

FERC does not deny that it failed to find any existing tariff governing transmission planning or cost allocation unlawful before imposing the Inclusion and Consultation Requirements.  Instead, FERC claims it met its statutory obligation under section 206 because it relied on "evidence that current transmission planning is deficient to address long-term needs, as well as FERC's predictive judgment that

3

growing stressors on the electric grid rendered the *status quo ante* unjust and unreasonable." FERC Br. 111 (citing Order 1920-A at PP 69-85, JA2049-2065). That theory radically expands FERC's authority to abrogate rate tariffs under FPA section 206 beyond anything Congress intended.

First, FERC continues to cite comments and material advocating a *general need for long-term transmission planning*, FERC Br. 114-18, but that has no bearing on Transmission Owners' argument that the Requirements impose unlawful constraints on Transmission Owners' statutory right to file *cost-allocation methodologies*. Neither FERC's Orders nor the three generic "findings" FERC summarized, *id*. at 116-17, address any deficiencies in *cost-allocation methodologies* for transmission upgrades, which are the basis of the bulk of utility section 205 rate filings in this area. FERC did not provide any reason for finding *any* existing cost-allocation methodologies for regional projects to be unjust and unreasonable, much less *all* of them.

Second, FERC repeatedly refers to evidence of "deficiencies" in the transmission planning process, FERC Br. 111-20, but that is not a substitute for finding that an existing rate, contract, or practice is *unlawful*. FPA section 206 permits FERC to set aside a rate it has found "unjust, unreasonable, unduly discriminatory or preferential." 16 U.S.C. § 824e(a). The statute does not permit

4

FERC to replace a rate it merely finds "deficient," whatever that unexplained term may mean.

Third, FERC claims it found the entire "*status quo ante*" for transmission planning unjust and unreasonable. FERC Br. 110-21. This, again, is something FERC may not do; it may not simply assume that any rate other than its replacement rate is "*per se* unlawful in a section 206 proceeding." *Emera Maine*, 854 F.3d at 26. There is no limiting principle to FERC's position. The carefully delineated statutory structure will be nullified if FERC is permitted to impose any rate it wishes under section 206 on the basis that it regards the replacement rate as an improvement to correct "deficiencies." As Commissioner Christie explained in his dissent from Order 1920, FERC "presents no justification for taking action *in this proceeding* against *all* of the filed transmission rates pursuant to FPA section 206," but instead "relies on cherry-picked special interest comments to support the pre-baked and pretextual findings needed to enact the administration's preferential, and *discriminatory*, policy agenda." Order 1920, (Christie, Comm'r, dissenting) at P 59 (footnotes omitted), JA1940.

Fourth, FERC's repeated plea for deference to its "predictive judgment" is founded on *South Carolina Public Service Authority v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) ("*South Carolina*"), which affirmed transmission planning reforms known as Order No. 1000. That decision is not binding in this Circuit, and there are

good reasons to doubt its vitality in light of subsequent precedent. *South Carolina* relied heavily on "the deferential standard in step two of the *Chevron* analysis," to find that FERC "reasonably interpreted Section 206 to authorize the Final Rule's planning mandate." *Id*. at 58-59. *Chevron* deference was abrogated in *Loper Bright Enterprises. v. Raimondo*, 603 U.S. 369 (2024). *South Carolina* was also decided before the Supreme Court emphasized that FERC's jurisdiction is confined to practices that "*directly* affect" wholesale rates, *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 278 (2016), and before the D.C. Circuit resumed strict enforcement of FPA section 206 in response to FERC's increasingly lax approach in *Emera Maine*, 854 F.3d at 26 (examining precedent).

Finally, FERC incorrectly argues that the Transmission Owners "fatally" declined to "contest any of FERC's substantive findings." FERC Br. 119. What findings were Transmission Owners meant to challenge? FERC's so-called "substantive findings" were generic and did not address any identified cost-allocation methodology. That is the problem: the Rule fails under FPA section 206 because FERC *did not make any* finding that any regional or utility-specific tariff's cost-allocation methodology was unlawful, leaving Transmission Owners with nothing specific to defend or attack.

As in earlier rulemakings, FERC should have given each transmission provider an opportunity to demonstrate "at a hearing" that its tariff allocates the cost

6

of long-term transmission projects in a just and reasonable manner. For example, in the Order 1000 proceeding, FERC established individual hearings to determine whether its abrogation of specific provisions in existing agreements met the elevated *Mobile-Sierra* "public interest" standard, and it issued individualized determinations in each case, which were subsequently affirmed. *See, e.g.*, *Okla. Gas & Elec. Co. v. FERC*, 827 F.3d 75 (D.C. Cir. 2016); *MISO Transmission Owners v. FERC*, 819 F.3d 329 (7th Cir. 2016). The instant rule, by contrast, found zero cost-allocation methodologies unlawful, and FERC's attempt to circumvent the procedural requirements of FPA section 206 must be vacated.

## II.    THE INCLUSION REQUIREMENT VIOLATES FPA SECTION 205

State regulators have no right to propose rates under FPA section 205, and they may not dictate the content of public utility section 205 filings with FERC. Nevertheless, FERC's novel Inclusion Requirement purports to place transmission providers' cost-allocation methods on equal footing with conflicting state regulator proposals by requiring their inclusion in utility filings, thus allowing FERC to choose a rival state-preferred method even if the public utility's method is just and reasonable. FERC defends this unprecedented invasion of public utilities' exclusive statutory filing rights by emphasizing formal distinctions between FPA section 205 rate filings (a creature of statute) and section 206 compliance filings (a creature of FERC practice). FERC Br. 193-96. However, courts have explained that both

7

sections "are simply parts of a single statutory scheme under which all rates are *established initially* by the [public utilities]." *Atlantic City I*, 295 F.3d at 10. FERC's approach unlawfully exceeds FERC's authority under FPA section 206 and violates Transmission Owners' FPA section 205 rights.[2]

"It is well-settled that '[n]othing in section 206 sanctions denying petitioners their right to unilaterally file rate and term changes.'" *PJM Power Providers Grp. v. FERC*, 88 F.4th 250, 270 n.122 (3d. Cir. 2023) (quoting *Atlantic City I*, 295 F.3d at 10). FERC cannot, through a rulemaking, warp the FPA's carefully reticulated structure by allowing a state's rate proposal to establish the rates and terms of service over the transmission provider's facilities. *See Mass. v. FERC*, 729 F.2d 886, 886-87 (1st Cir. 1984) (holding unlawful a state's attempt to order a utility to file state-desired rate changes with FERC, which "threatens confusion, possibly chaos" because it allows "each state in a multistate service area" to force utilities to file a conflicting cost allocations "that benefit[] its residents to the detriment of its neighbors").

In the *Atlantic City* cases, the D.C. Circuit *twice* rejected FERC's attempts to use its section 206 authority on compliance to force transmission owners to cede

---

[2]    Certain respondent-intervenors and amici support FERC's position, but add nothing that merits a separate reply. *See* Mich. & Pa. Pub. Serv. Comm'n Br. 13-26, Amici Curiae States Br. 15-20; Organization of PJM States ("OPSI") Br. 25-32.

section 205 rights. *See Atlantic City* at 10; *Atlantic City II* at 859 ("Lest there be any doubt, we so hold once more. When FERC attempts to deprive the utilities of their rights to initiate rate design changes with respect to services provided by their own assets, FERC has exceeded its jurisdiction.").

Although FERC now claims the *"Rule is nothing like the FERC decision at issue in Atlantic City,"* FERC Br. 201, that position conflicts with FERC's Orders below. Order 1920 explicitly relied on *Atlantic City* and section 205 to conclude that FERC lacked authority to force public utilities to file state-preferred cost-allocation proposals. *See* Order 1920 at PP 1356 n.2895, 1363 n.2908, JA1564, JA1569-1570. FERC ignored that determination when it reversed position and imposed the Requirements in Order 1920-A, attempting to circumvent FPA section 205 under the banner of "compliance" with section 206.

When FERC finds an existing rate or tariff unjust and unreasonable, it has two choices: fix the rate itself or direct the utility to propose a replacement rate consistent with FERC's finding. When FERC does not fix the rate itself in the order, but instead announces general rules or principles, any filing designed to comply with that order is governed by the principles of section 205, and FERC has recognized that it should adopt regulated utilities' compliance proposals, if they are just and reasonable, over those of another entity. *See, e.g.*, *Midwest Indep. Transmission Sys. Operator, Inc.*, 122 FERC ¶ 61,084, at P 21 n.18 (2008) ("In considering competing

9

proposals [in a section 206 proceeding], [FERC] ordinarily will choose the proposal of the regulated utility if it is just and reasonable even if other just and reasonable proposals are made by others."); *PJM Interconnection, L.L.C.*, 119 FERC ¶ 61,318, at P 115 n.124 (2007) (explaining "why such preference makes sense"); *PJM Interconnection, L.L.C.*, 117 FERC ¶ 61,331, at P 85 (2006) ("[W]hen choosing between competing just and reasonable options, [FERC] has previously stated that it will accept the proposal of a utility if it is just and reasonable, rather than other competing just and reasonable proposals."); *see also Kern River Gas Transmission Co.*, 142 FERC ¶ 61,132, at P 37 & n.50 (2013) (same under parallel provision of Natural Gas Act ("NGA")).

FERC's attempt to explain away this precedent is unpersuasive. FERC recognizes that "it generally will accept a public utility compliance filing if 'just and reasonable,' even if alternative 'just and reasonable' proposals exist," FERC Br. 197, but dismisses this approach as a mere "pragmatic consideration" subject to its discretion, *id.* 198. Not so. As Transmission Owners previously explained, (Br. 24-25), when FERC orders a compliance filing without first fixing a replacement rate, it has left the "process initially to the utility, subject to subsequent agency approval," *Elec. Dist. No. 1 v. FERC*, 774 F.2d 490, 494 (D.C. Cir. 1985). If the utility's proposed replacement rate is consistent with the underlying order's requirements

10

and is just and reasonable, FERC must accept it. *See City of Cleveland v. FERC*, 773 F.2d 1368, 1374 (D.C. Cir. 1985).

FERC's Orders, like previous rulemakings, did not fix a replacement rate, but instead adopted general principles and criteria to govern long-term planning. Rather than allow public utilities to make their own section 205 filings to comply with the new Rule, with acceptance turning on whether the filing is just and reasonable, the Rule compels utilities to file rate proposals for other entities that lack section 205 filing rights under the guise of "compliance."

FERC argues the Inclusion Requirement should be upheld because it "strikes a balance between state and transmission provider interests." FERC Br. 191 (citing Order 1920-A at P 653, JA2535-2536). FERC then asserts there are "good reasons" for considering state-developed cost-allocation methods. *Id.* 199-200. But FERC has no authority to strike a balance that Congress did not permit, regardless of whether FERC believes there are good reasons for doing so. Nor can FERC strip utilities of their rights under section 205, particularly when doing so is founded on a prediction that states *might* propose something different. If Congress thought there were "good reasons" to alter the statutory structure described in *Atlantic City* and earlier cases, it could have done so when it amended the FPA in either 2005 or 2021. *See* Energy Policy Act of 2005, Pub. L. 109-58, 119 Stat. 594 (Jan. 7, 2005);

11

Infrastructure Investment and Jobs Act, Pub. L. 117-58, 135 Stat. 429 (Nov. 15, 2021).

FERC strives to minimize the Inclusion Requirement by asserting it is merely seeking to "assist in building the record for [FERC's] exercise of its own authority to determine and fix the just and reasonable rate under [section 206]." FERC Br. 194 (quoting Order 1920-B at P 59, JA2862). But that is unnecessary: states already have, and frequently exercise, the right to protest or comment on FERC filings, including compliance filings. *See* 18 C.F.R. §§ 385.214, 385.211. Indeed, states have successfully influenced judicial and FERC decisions through this approach. *See, e.g.*, *Cal. Pub. Utils. Comm'n v. FERC*, 879 F.3d 966 (9th Cir. 2018) (granting a state commission's petition for review of FERC order accepting a utility's section 205 filing).

FERC far exceeds its authority by allowing states to insert competing cost allocation proposals into public utility filings, and then—even worse—to adopt the state's proposal even when the utility's proposal is just and reasonable. FERC cannot infringe utilities' section 205 rights just by calling it a section 206 remedy. Accordingly, the Inclusion Requirement must be set aside.

## III.    THE CONSULTATION REQUIREMENT VIOLATES FPA SECTION 205

FERC's Consultation Requirement is unlawful because it categorically bars Transmission Owners from exercising their section 205 filing rights to change cost

12

allocation unless they first consult with state regulators and publicly memorialize those interactions. Order 1920-A at P 691, JA2566-2567; Transmission Owner Br. 33-36. FERC frames the Consultation Requirement as "essentially a pre-filing meet-and-confer," FERC Br. 204, baldly asserting that it "preserves in full transmission providers' Section 205 filing rights." *Id.* at 205; *see* States Amici Br. 19. That assertion is false.

FERC first claims that some Transmission Owners did not challenge the Consultation Requirement, and thus "admitted" the requirement does not limit section 205 rights. FERC Br. 206. That claim is both false and irrelevant: Transmission Owner petitioners from two regional organizations (PJM and SPP) clearly preserved this challenge, and FERC does not claim otherwise.[3]

Turning to the merits, FERC argues the "plain text" of section 205(c), 16 U.S.C. § 824d(c), permits FERC to determine how and when a public utility may file rate changes, claiming that a "procedural" requirement to consult with state regulators "falls comfortably within" its authority. FERC Br. 207. Not so. FERC

---

[3] As to MISO Transmission Owners, FERC misconstrues their rehearing request, FERC Br. 206, relying on selective snippets from a section that has *nothing* to do with the Consultation Requirement but instead concerns a different issue—FERC's preferencing Relevant State Entities' cost-allocation methods over the transmission provider's own. MISO Transmission Owners Second Rehearing Request 37-38, JA5483-JA5484. Contrary to FERC's claim, the MISO Transmission Owners explicitly challenged the Consultation Requirement. *Id*. at 27-33, JA5473-JA5479.

13

has the authority to establish a filing *process* under FPA section 205, but exceeds it by attempting to *dictate the content* of cost-allocation filings.

FERC's expansive statutory interpretation conflicts with long-standing and binding precedent. The Supreme Court first explained the scope of filing rights under the NGA, noting that "virtually identical provisions of the [FPA] authorize *unilateral* contract changes." *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.*, 350 U.S. 332, 346 (1956) ("*Mobile*") (emphasis added). The Court determined the statute's various sections "are simply parts of a single statutory scheme under which all rates are established initially by" the public utilities, and highlighted that the NGA "merely defines the *review powers* of [FERC] and imposes such duties on [utilities] *as are necessary to effectuate those powers*[.]" *Id.* at 341 (emphasis added). The Consultation Requirement imposes a novel prerequisite to exercising filing rights that is clearly not "necessary to effectuate" FERC's "review powers" under FPA section 205 because this new requirement was promulgated 90 years after the statute was enacted.

The *Mobile* decision guided the D.C. Circuit's decision in *Atlantic City*, which squarely held that FERC may not "prohibit public utilities from filing changes in the first instance." *Atlantic City I*, 295 F.3d at 10. The court further declared that "[n]o matter how 'bedrock' the principle" that FERC promotes through its rules—such as balancing stakeholder interests, FERC Br. 210—"[i]t cannot be the basis for denying

14

the petitioners their rights provided by a statute enacted by both houses of Congress and signed into law by the president." 295 F.3d at 11. Nothing in FPA section 205 conditions a utility's filing rights on prior consultation with another party, regardless of FERC's arguments to the contrary. *See* FERC Br. 201-02; States Amici Br. 19.

FERC similarly brushes off longstanding precedent that explains public utilities may propose rate changes "at will" and "*without* negotiation or consultation with anyone." *City of Cleveland v. FPC*, 525 F.2d 845, 855 (D.C. Cir. 1976). FERC dismisses that statement as mere "*dictum*," claiming the Supreme Court later "cast doubt" on the case. FERC Br. 208-09 (citing *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 582 n.12 (1981)); *see* States Amici Br. 19. But the quoted language is not *dictum*; its description of how the FPA works in the context of contracts was necessary to decide the case. Moreover, while *Ark. La. Gas* distinguished its rejection of the state courts' unlawful modification of a federal filed rate from *Cleveland v. FPC*, which "involved a claim that the rate itself had been filed in violation of a contract," 453 U.S. at 582 n.12, *Ark. La. Gas* did not repudiate the D.C. Circuit's statement, drawn from *Mobile*, that utilities may file rate changes at will without consultation, 525 F.2d at 855. Indeed, *Atlantic City I* relied on *Cleveland v. FPC* for the same proposition, holding that FERC had "eliminated the very thing that the statute was designed to protect—the ability of the utility owner to set the rates it will charge prospective customers, and *change them at will*, subject

15

to review by the Commission." 295 F.3d at 10 (emphasis added) (cleaned up). The same "at will" filing rights apply here and invalidate the Consultation Requirement.

Continuing its campaign to distinguish landmark judicial precedent, FERC argues that *NRG Power Marketing, LLC v. FERC*, 862 F.3d 108, 114-15 (D.C. Cir. 2017), is "inapposite" because it rejected FERC's modifications of an original rate proposal, while the Consultation Requirement is "merely a procedural pre-filing requirement." FERC Br. 209; *see* States Amici Br. 20. But the Transmission Owners relied on *NRG*'s holding—that FERC may not alter a public utility's FPA section 205 filing without the utility's consent, 862 F.3d 108—to highlight the contrast with FERC's Consultation Requirement, which hampers the utility's rights *prior to* filing. Transmission Owners Br. 34-35. If FERC cannot alter a public utility's section 205 filing after the fact, it surely cannot condition a utility's filing rights on consultation with third parties beforehand.

Finally, FERC claims the Consultation Requirement addresses the FPA's "primary purpose" and "fundamental mandate" to ensure just and reasonable rates. FERC Br. 209-11; *see* OPSI Br. 31-32. Nothing in the FPA provides FERC discretion to condition public utilities' filing rights on prior coordination with other parties, particularly those FERC expects to be adverse.

Amicus OPSI claims FERC precedent requires pre-filing consultations, OPSI Br. 30-31, but its precedents are inapposite. OPSI cites a case concerning

16

information exchanges in formula rate protocols, but that case only requires utilities to *provide information* regarding inputs to rate formulas that are *already on file* at FERC; it does not require any consultation whatsoever before the utility files a rate change. *See Sys. Energy Res., Inc.*, 168 FERC ¶ 63,001, P 43 (2019). OPSI cites a case in which a utility sought guidance from FERC, which established a technical conference to "resolve issues … in developing [the utility's] Section 205 filing." *Entergy Servs.*, 104 FERC ¶ 61,336, at P 45 (2003). But a *voluntary* request for FERC guidance is not comparable to FERC's *mandatory* Consultation Requirement. Finally, OPSI cites a FERC policy statement declaring that "pipelines should meet with their customers and other interested parties to seek resolution of as many issues as possible before submitting a modernization cost recovery proposal to [FERC]." *Cost Recovery Mechanisms for Modernization of Natural Gas Facilities*, 151 FERC ¶ 61,047, P 93 (2015). But that issuance did *not* restrict a pipeline's unilateral right to propose rate changes; rather, it *allowed* pipelines to *avoid a full rate case* if the pipeline voluntarily invited interested parties to comment beforehand. *Id.* PP 93-94. That accommodation is irreconcilable with FERC's Consultation Requirement, which unlawfully forces utilities to consult before exercising their statutory filing rights "at will."

17

## IV.    THE REQUIREMENTS VIOLATE THE FIRST AMENDMENT

FERC cannot compel Transmission Owners "to alter their speech to conform with an agenda they do not set," or force a public utility "to tailor its speech to an opponent's agenda" or "respond to views that others may hold." *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 9-11 (1986).  The Requirements force Transmission Owners to attach and transmit a rival policy message and explain why they reject rival views.  That compelled speech violates the First Amendment.

### A.    The First Amendment Applies to Public Utility Filings at FERC

FERC insists the speech it compels is "not expressive" and does not implicate the First Amendment because the Requirements only compel factual disclosures necessary for "essential operations of government."  FERC Br. 211-17.  Both arguments misstate the facts and the law.[4]

First, government-compelled speech is not exempt from First Amendment protection when the compelled communications are made to the government; rather, the nature of government's interest and the extent of its compulsion determine the

---

[4]    FERC also argues that Transmission Owners did not challenge other FERC disclosure requirements under the First Amendment, and that Transmission Owners remain free to advocate for their positions in their filings.  FERC Br. 215-16.  There is no *res judicata* where past petitioners did *not* raise constitutional objections to *different* rules, and FERC cannot cure unconstitutionally compelled speech under the Requirements by pointing to other "non-regulatory" opportunities where Transmission Owners may choose whether and how to communicate.  *Id.* at 215 (citing Order 1920-B P 101, JA2907-2909).

18

standard of review. *See Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021).

Second, FERC's authorities concern only disclosure of straightforward facts, not rival policy positions. *See Scahill v. D.C.*, 909 F.3d 1177, 1180 (D.C. Cir. 2018) (presence of person at a bar); *United States v. Sindel*, 53 F.3d 874, 875-76 (8th Cir. 1995) (names and addresses of transaction participants). FERC's comparison of the Requirements to routine facility-replacement reporting only underscores FERC's constitutional problem. FERC Br. 213-14. The Requirements do not merely compel communication of operational data, but instead force utilities to present states' policy preferences and explain any disagreement. Order 1920-B at P25, JA2825-JA2826.

Third, FERC conjures a broad "essential operations" exception from dicta in a concurrence in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), and *Sindel*, 53 F.3d at 878 (citing *Barnette*). Neither case supports any notion that FERC can immunize compelled speech by labeling it "essential" for regulatory operations. This Court has not embraced an "essential operations" exception, and to the extent an exception exists elsewhere it is very narrow. *See Book People, Inc. v. Wong*, 91 F.4th 318, 339 (5th Cir. 2024) ("essential operations" exception was based on "limited precedent" involving sex offender registration requirements, IRS disclosures, and census information; exception did not apply to law requiring book

19

vendors to issue sexual-content ratings for publication on an agency website under vendor's name).

## B.    Strict Scrutiny Applies

FERC argues the Requirements pass muster as permissible commercial-speech disclosure requirements.    FERC Br. 218-22.    This fundamentally mischaracterizes the facts and law.  The Requirements mandate advocacy, not factual disclosures, and strict scrutiny applies to advocacy.  *Pacific Gas*, 475 U.S. at 19.

There is no proposed commercial transaction here—FERC is not a supplier or customer of the Transmission Owners; it is their regulator.    Regulation of commercial speech beyond proposing a business transaction is limited, with courts considering whether the speech is (1) advertisement; (2) refers to a specific product or service; and (3) economically motivated.  *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 285 (4th Cir. 2013) (discussing factors in *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983) ("*Bolger*")).  Here, each of the *Bolger* factors swings against FERC: (1) FERC does not argue the speech is advertisement; (2) competing cost-allocation methodologies are not references to products or services; and (3) the cost-allocation proposals directly advocate FERC's adoption of regulatory policies.

Even when commercial interests arise, it is axiomatic that advocacy—whether emerging from raw self-interest or high-minded ideals—receives full First

20

Amendment protection. *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139 (1961). FERC's cases all concern raw facts, not analytical opinion or advocacy. *See Md. Shall Issue, Inc. v. Anne Arundel Cnty.*, 91 F.4th 238, 242-44 (4th Cir. 2024) (mandate to distribute facts about suicide prevention); *Zauderer v. Office of Disciplinary Couns.*, 471 U.S. 626, 650 (1985) (limits on misleading statements about contingent-fee representation); *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009) (public-health mandate for "simple factual disclosure of caloric information"). The cost-allocation proposals, conversely, are advocacy for a preferred methodology to distribute the costs of infrastructure. FERC is not requiring Transmission Owners to list facts about their policy proposals, but to present the agency with a "menu" including the states' alternative proposed "entrees," enabling FERC to order its preferred "meal" from both.

That the state policy views FERC seeks to force Transmission Owners to incorporate into their filings contain "relevant, factual information concerning state-developed cost allocation methods[,]" FERC Br. 221, does not remove them from the realm of advocacy. All advocacy is presumably based upon some facts; if the presence of facts supporting a proposed policy were sufficient to render a cost allocation proposal "commercial speech," the only fully protected speech would be speech based on nothing at all. Such a view has no support in the law.

21

### C. The Requirements Violate the First Amendment Under Any Level of Scrutiny

#### 1. Strict Scrutiny

FERC argues that even if analyzed under strict scrutiny, the Requirements are constitutional because (1) "ensuring 'just and reasonable' rates in the public interest" constitutes a compelling governmental interest; and (2) its approach is narrowly tailored because it has a "'substantial interest' in developing a record that includes states' views on the appropriate allocation of the costs of long-term transmission facilities[.]" FERC Br. 223-24. The Requirements fail both prongs.

First, FERC cites no case law providing that ensuring "just and reasonable" rates is a compelling interest under strict scrutiny. Second, FERC fails to articulate how the Requirements serve this goal except in reference to administrative convenience of the agency. FERC asserts that the Requirements help FERC "to *efficiently consider* the views of both Relevant State Entities and transmission providers." Order 1920-B at P 98 (emphasis added), JA2903. "Efficient consideration" is just "administrative convenience," which is not a compelling interest. *See Americans for Prosperity*, 594 U.S. at 614-15.

Third, even if the Requirements pursued a compelling government interest, they are not narrowly tailored. FERC cites nothing to support its position that compelling inclusion and response to states' policy views is the only way to ensure

22

these views are in the record. To the contrary. states may file their own comments, or may file section 206 petitions to argue proposed rates are unjust and unreasonable.

### 2. Intermediate Scrutiny

FERC does not address the constitutionality of the Requirements under intermediate scrutiny, thus waiving this argument. *See Stokes v. Stirling*, 64 F.4th 131, 137 (4th Cir. 2023). For all the reasons set forth here and in the Transmission Owners' Brief (at 45-47), the Requirements are unconstitutional under an intermediate-scrutiny framework.

### 3. The *Zauderer* Test

FERC seeks a lower level of scrutiny: the *Zauderer* test for commercial disclosures, which upholds rules requiring disclosure of "purely factual and uncontroversial" information "reasonably related" to governmental interests "not unjustified or unduly burdensome." FERC Br. 219-20. The compelled disclosures here are far from "factual and uncontroversial;" indeed FERC requires them only when there is a controversy between the Transmission Owners and the states, and compels the Transmission Owners to also explain their side of the controversy. And even if this test were applicable FERC fails it.

Speech is "purely factual" when it is true and neither one-sided nor framed in a way that could mislead the recipient. *See N.Y. State Rest. Ass'n*, 556 F.3d at 118 (caloric information); *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 115 (2d Cir.

2001) (presence of mercury in certain products). Compelled speech is not "purely factual" when, as here, it used "to influence public conduct through manipulation of the availability of information," *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 572 (1980) (Blackmun, J., concurring), or when it omits relevant context or evidence, *see Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 479-80 (9th Cir. 2022) (mandated disclosure about "known carcinogen" not "purely factual" when it did not clarify limited evidence of human impact); *Am. Bev. Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 761 (9th Cir. 2019) (warning on sugar-sweetened beverages was "one-sided," not purely factual). "[A] compelled statement is 'uncontroversial' for purposes of *Zauderer* where the truth of the statement is not subject to good-faith scientific or evidentiary dispute and where the statement is not an integral part of a live, contentious political or moral debate." *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 281-82 (5th Cir. 2024) (citing *Pacific Gas*, 475 U.S. at 8-9, and *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 769 (2018) ("*NIFLA*")). The compelled speech here is neither "factual" nor "uncontroversial."

States' cost-allocation methodology preferences are policy positions, not facts. Forcing inclusion of different sides of that dispute is quite controversial. *See NIFLA*, 585 U.S. at 769 (invalidating requirement that crisis pregnancy centers disclose "information about state-sponsored services" in opposition to centers'

24

policy views). Moreover, the Requirements are unjustified and unduly burdensome because they "drown out" the utilities' message, *NIFLA*, 585 U.S. at 778, and there are clear alternatives (namely, allowing the states themselves to file their proposed cost-allocation methodologies), *id.* at 775 (public-information campaigns were alternatives to forcing crisis pregnancy centers to speak). FERC has an easy avenue to obtain the state's positions through its existing comment regulations.

## V. THE RULE ARBITRARILY AND UNREASONABLY COMPELS PUBLIC DISCLOSURE OF CONFIDENTIAL INFORMATION

The Rule's requirement that Transmission Owners must publish lists of in-kind facility replacements anticipated ten years in the future impermissibly obligates Transmission Owners to make highly sensitive and confidential information available to their direct competitors and to the public at large. *See* Transmission Owner Br. 48-57. Petitioners do not seek to shield replacement projects from scrutiny once planning begins. But nothing in the FPA, the record, or FERC's own explanation supports forcing Transmission Owners to publish lists of potential replacement facilities to competitors and third parties when disclosure to regional planners fully serves FERC's stated goals. Because public disclosure is neither necessary nor reasonable, the requirement must be vacated.

The Transmission Owners do not object to providing lists of facilities likely to require replacement to regional transmission planners or to broader disclosure of replacement candidate facilities once those facilities are under active consideration

25

in the long term regional planning process.  Transmission Owner Br. 51-52.  FERC's arguments defending those requirements, FERC Br. 234-36, in no way addresses the Transmission Owners' challenge to *public* disclosure of potential replacement facilities ten years *before* they are part of any active regional planning process. FERC does not explain why disclosure to anyone other than the regional transmission planner is necessary to achieve the Rule's transparency or planning objectives.

FERC's argument that confidentiality protections and nondisclosure agreements are available, FERC Br. 234, misses the point.  The Transmission Owners showed in their opening brief that these mechanisms are entirely inadequate to protect against the harms of disclosing detailed, forward-looking lists of potentially vulnerable transmission facilities, years in advance of any identified regional need, and made available to competitors and other third parties whose interests may not align with grid security or reliability.  Transmission Owners Br. 52-54.  FERC never addresses the risk that disseminating such information—even under nominal confidentiality agreements—could compromise grid security or distort competitive dynamics.

With nowhere else to turn, FERC asks that the disclosure requirement be allowed as a matter of "agency line-drawing judgment."  FERC Br. 235.  Merely invoking discretion does not excuse the agency from reasoned decision-making.

26

"An agency must "examine the relevant data and articulate a satisfactory explanation for its action including 'a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). FERC makes no effort to explain why the same planning objectives cannot be achieved through disclosure solely to the regional planner, and thus why the line cannot be drawn so as to protect the Transmission Owners' highly confidential and sensitive information. Calling this "agency line-drawing judgment" is not a substitute for the reasoned decision-making required by the APA. *See id.* at 48 (agency acts arbitrarily when it does not explain why less burdensome alternatives of achieving the same objectives are inadequate); *Farmers Union Cent. Exch., Inc. v. FERC*, 734 F.2d 1486, 1511 (D.C. Cir. 1984) ("[A]n agency has a duty to give a reasoned explanation for its rejection of [responsible] alternatives.").

FERC attempts to dismiss the Transmission Owners' competitive concerns by asserting that non-incumbents are "new entrants" that do not own transmission facilities, and that the Rule applies only to a "list of in-kind replacement estimates," not to broader development and investment opportunities. FERC Br. 235-36. FERC misses the point. Competitive harm does not arise because non-incumbents lack legacy assets. It arises because the Rule compels incumbents to publicly disclose forward-looking internal assessments of asset condition, replacement timing, and

27

cost estimates years before those issues arise in the regional planning process. By requiring public release of that information many years in advance of any formal planning determination, the Rule allows market participants to position themselves around incumbents' internal planning analyses rather than around needs that have been vetted and defined through the regional process. The asymmetry is informational, not asset-based.

## CONCLUSION

The petitions for review should be granted and FERC's Orders should be vacated.

Respectfully submitted,

/s/ *John Lee Shepherd, Jr.*
John Lee Shepherd, Jr.
Nathan R. Menard
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave, NW
Suite 900
Washington, DC 20037
(202) 955-1500
jshepherd@hunton.com
nmenard@hunton.com

*Counsel for the Southwest Power Pool Transmission Owner Group*

Carrie L. Bumgarner
Senior Counsel
American Electric Power Service Corporation
1 Riverside Plaza
Columbus, OH 43215
(614) 716-2941
clbumgarner@aep.com

*On behalf of American Electric Power Service Corporation*

Denise Buffington
Senior Director Federal Regulatory Affairs
Evergy, Inc.
1200 Main Street
Kansas City, MO 64105
(816) 556-2683
denise.buffington@evergy.com

*On behalf of the Evergy* Companies

Timothy T. Mastrogiacomo
Vice President, Federal Regulatory, Legal, and Policy
Xcel Energy Services Inc.
701 Pennsylvania Avenue, NW, Ste. 250
Washington, DC 20006
(202) 661-4481
tim.t.mastrogiacomo@xcelenergy.com

*On behalf of Southwestern Public Service Company*

29

Steven M. Nadel
Senior Counsel
PPL Services Corporation
645 Hamilton Street, Suite 700
Allentown, PA 18101
(610) 774-4775
SMNadel@pplweb.com

John Longstreth
Donald A. Kaplan
Chimera N. Thompson
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C.  20006
(202) 778-9000
john.longstreth@klgates.com
don.kaplan@klgates.com
chimera.thompson@klgates.com

Michelle S. Kallen
William M. Keyser
Steptoe LLP
1330 Connecticut Avenue N.W.
Washington, D.C. 20036
(202) 429-8186
mkallen@steptoe.com
wkeyser@steptoe.com

*Counsel for PPL Electric Utilities Corporation*

Molly Suda
Associate General Counsel
Duke Energy Corporation
1301 Pennsylvania Ave. NW,
Suite 200
Washington, D.C. 20004
(202) 824-8011
molly.suda@duke-energy.com

*Counsel for Duke Energy*

30

William M. Rappolt
Assistant General Counsel, FERC
AES US Services LLC
4300 Wilson Blvd
Arlington, VA 22203
(703) 682-6337
william.rappolt@aes.com

*Counsel for The Dayton Power and Light Co.*

Gary E. Guy
Assistant General Counsel
Exelon Corporation
701 Ninth Street, N.W., Suite 9426
Washington, D.C. 20068
(301) 956-6754
gary.guy@exeloncorp.com

*Counsel for Exelon Corporation, Atlantic City Electric Company, Baltimore Gas and Electric Company, Commonwealth Edison Company, Delmarva Power & Light Company, PECO Energy Company, and Potomac Electric Power Company*

William H. Baxter II
Dominion Energy Services, Inc.
120 Tredegar Street, Riverside 6th Floor
Richmond, VA 23219
(804) 819-2458
william.h.baxter@dominionenergy.com

*Counsel for Dominion Energy Services, Inc., on behalf of its affiliate Virginia Electric and Power Company*

David M. Gossett
Davis Wright Tremaine LLP
1301 K Street, NW
Suite 500 East
Washington, D.C. 20005
(202) 973-4200
davidgossett@dwt.com

Sanford I. Weisburst
Quinn Emanuel Urquhart &
Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000
sandyweisburst@quinnemanuel.com

*Counsel for the FirstEnergy Transmission Companies*

Carrie L. Bumgarner
Senior Counsel
American Electric Power Service Corporation
1 Riverside Plaza
Columbus, OH 43215
(614) 716-2941
clbumgarner@aep.com


*Counsel for American Electric Power Service Corporation on behalf of its affiliates Appalachian Power Company, Indiana Michigan Power Company, Kentucky Power Company, Kingsport Power Company, Ohio Power Company, Wheeling Power Company, AEP Appalachian Transmission Company, Inc., AEP Indiana Michigan Transmission Company, Inc., AEP Kentucky Transmission Company, Inc., and AEP Ohio Transmission Company, Inc.*

Daniel E. Frank
Allison E.S. Salvia
Eversheds Sutherland (US) LLP
700 Sixth St., N.W., Suite 700
Washington, D.C.  20001-3980
(202) 383-0100
danielfrank@eversheds-sutherland.com
allisonsalvia@eversheds-sutherland.com

*Counsel for East Kentucky Power Cooperative, Inc.*

Donald A. Kaplan
K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20006
(202) 778-9000
don.kaplan@klgates.com

*Counsel for Duquesne Light Company*

Joshua A. Kirstein
Paul Savage
Consolidated Edison Company of New York, Inc.
4 Irving Place, 18th Floor
New York, NY 10003
(929) 656-5971
kirsteinj@coned.com
savagep@coned.com

*Counsel for Rockland Electric Company*

Wendy N. Reed
Matthew J. Binette
Abraham F. Johns III
WRIGHT & TALISMAN, P.C.
1200 G Street N.W., Suite 600
Washington, DC  20005-3898
(202) 393-1200
reed@wrightlaw.com
binette@wrightlaw.com
johns@wrightlaw.com

*Counsel for the MISO Transmission Owners:*
*Ameren Services Company, as agent for Union Electric Company d/b/a Ameren*
*Missouri, Ameren Illinois Company d/b/a Ameren Illinois and Ameren Transmission*
*Company of Illinois; American Transmission Company LLC; Central Minnesota*
*Municipal Power Agency; Cooperative Energy; Dairyland Power Cooperative; Duke*
*Energy Business Services, LLC for Duke Energy Indiana, LLC; Great River Energy;*
*Indiana Municipal Power Agency; Indianapolis Power & Light Company d/b/a AES*
*Indiana; Lafayette Utilities System; MidAmerican Energy Company; Minnesota Power*
*(and its subsidiary Superior Water, L&P); Montana-Dakota Utilities Co.; Northern*

33

*Indiana Public Service Company LLC; Northern States Power Company, a Minnesota corporation, and Northern States Power Company, a Wisconsin corporation, subsidiaries of Xcel Energy Inc.; Northwestern Wisconsin Electric Company; Otter Tail Power Company; Prairie Power, Inc.; Southern Indiana Gas & Electric Company (d/b/a CenterPoint Energy Indiana South); Southern Minnesota Municipal Power Agency; and Wolverine Power Supply Cooperative, Inc.*

Dated:  March 13, 2026

34

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the requirements of Rules 32(a)(5) and

32(a)(6) of the Federal Rules of Appellate Procedure because it has been prepared

in 14-point Times New Roman, a proportionally spaced font. I further certify that

this brief complies with the type-volume limitations of Circuit Rule 32(b) because it

contains 6,290 words, excluding the parts exempted by Federal Rule of Appellate

Procedure 32(f), according to the count of Microsoft Word.

/s/ *John Lee Shepherd, Jr.*
John Lee Shepherd, Jr.
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave, NW
Suite 900
Washington, DC 20037
(202) 955-1500
jshepherd@hunton.com

*Counsel for the Southwest Power Pool*
*Transmission Owner Group on behalf of*
*the Transmission Owner Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2026, I caused this brief to be electronically filed with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

<u>/s/ *John Lee Shepherd, Jr.*</u>
John Lee Shepherd, Jr.
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave, NW
Suite 900
Washington, DC 20037
(202) 955-1500
jshepherd@hunton.com

*Counsel for the Southwest Power Pool*
*Transmission Owner Group on behalf of*
*the Transmission Owner Petitioners*