**Case No. 24-1650 (L)**
**(RM21-17-000), (RM21-17-001), (RM21-17-002)**
**(consolidated with Nos. 24-1756, 24-1758, 24-1760, 24-1770, 24-1785, 24-1792, 24-1804, 24-1857, 24-1862, 24-1867, 24-1876, 24-1885, 24-1887, 24-1979, 24-1991, 24-2162, 24-2163, 25-1073, 25-1080, 25-1197, 25-1349)**

# In the United States Court of Appeals for the Fourth Circuit

———

APPALACHIAN VOICES, ET AL.,

Petitioners,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent,

ENTERGY OPERATING COMPANIES AND ENTERGY SERVICES, LLC, ET AL.,

Intervenors.

———

On Petition for Review of an Order of the Federal Energy Regulatory Commission

———

**REPLY BRIEF FOR STATE PETITIONERS**

———

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

William R. Peterson
Solicitor General

William F. Cole
Principal Deputy Solicitor General

Dimitri N. Rocha
Assistant Solicitor General
Dimitri.Rocha@oag.texas.gov

*Counsel for the State of Texas*

Thomas Van Flein
General Counsel

Sean Bodkin
Senior Associate General Counsel

Maureen A. Scott
Senior Associate General Counsel

Chief of Litigation & Appeals
Office of the General Counsel
Arizona Corporation Commission
1200 West Washington Street
Phoenix, Arizona 85007
(602) 542-3402
tvanflein@azcc.gov
mscott@azcc.gov

***Counsel for the State of Arizona Corporation Commission***

Russell Coleman
Attorney General

Matthew F. Kuhn
Solicitor General

John H. Heyburn
Principal Deputy Solicitor General

Jacob M. Abrahamson
Deputy Solicitor General

Office of the Kentucky Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov
Jacob.Abrahamson@ky.gov

***Counsel for the Commonwealth of Kentucky***

William D. Booth

Alex Peterson

Michael Best & Friedrich LLP
1000 Maine Avenue, S.W. Suite 400
Washington, D.C. 20024
(202) 747-9560
wdbooth@michaelbest.com
alpeterson@michaelbest.com

***Counsel for the State of Mississippi Public Service Commission***

Stanford Purser
Utah Solicitor General

Office of the Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
(801) 366-0100
spurser@agutah.gov

***Counsel for the State of Utah***

*Additional counsel on next page*

Christopher M. Carr
Attorney General

John Henry Thompson
Solicitor General

Elijah O'Kelley
Deputy Solicitor General

Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

***Counsel for the State of Georgia &
Georgia Public Service Commission***


Kathryn Bowman
Executive Counsel

Louisiana Public Service Commission
Galvez Building - 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana 70802
(225) 342-9888

Mathura J. Sridharan*
Solicitor General
*Counsel of Record

Zachery P. Keller
Deputy Solicitor General

Thomas G. Lindgren
Assistant Attorney General

30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Mathura.Sridharan@OhioAGO.gov

***Counsel for the Public Utilities
Commission of Ohio's Office of the
Federal Energy Advocate***

Noel J. Darce

Dana M. Shelton

Justin A. Swaim

Fishman Haygood, LLP
201 St. Charles Ave., Suite 4600
New Orleans, Louisiana 70170
(504) 586-5252

***Counsel for the State of the
Louisiana Public Service
Commission***

# Table of Contents

Page

Table of Authorities ..............................................................................v

Argument in Reply ................................................................................1

   I.   The State Petitioners Have Article III Standing to Challenge Order 1920.......................................................................................2

   II.   FERC Cannot Regulate Generation by Regulating Transmission..............4

      A.  Order 1920 directly affects generation rather than interstate transmission. ....................................................................5

      B.  *FERC v. Electric Power Supply Association* supports this conclusion. ..................................................................9

         1.  Order 1920 directly affects generation rather than interstate transmission. ......................................................9

         2.  FERC's authority over transmission does not provide unlimited authority to regulate generation. ...................... 11

         3.  Order 1920 implements a regulatory agenda rather than addressing price and reliability. ..................................... 12

      C.  The States' exercise of authority over generation does not act as a barrier to FERC's regulation of transmission. ........................... 13

   III.  Constitutional Doctrines Involving Federalism and Separation of Powers Principles Invalidate Order 1920. ................................. 14

   IV.  FERC failed to establish that existing transmission was deficient under the FPA, while also failing to establish that the replacement was reasonable.................................................................. 17

      A.  FERC's nationwide generic rulemaking is unreasonable without sufficient supporting evidence............................... 17

      B.  Order 1920's replacement rate is unreasonable. ............................ 18

   V.  Order 1920 Is Not a Logical Outgrowth of FERC's Original Proposal....................................................................................22

Conclusion.........................................................................................25

iv

# Table of Authorities

Page(s)

**Cases:**

*Am. Paper Inst. v. EPA,*
    660 F.2d 954 (4th Cir. 1981)................................................................... 22

*Ass'n of Private Sector Colls. & Univs. v. Duncan,*
    681 F.3d 427 (D.C. Cir. 2012) ........................................................... 4

*Biden v. Nebraska,*
    600 U.S. 477 (2023)...............................................................15, 16

*Bowen v. Pub Agencies Opposed to Soc. Sec. Entrapment,*
    477 U.S. 41 (1986).................................................................3, 4

*Building for the Future Through Elec. Reg'l Transmission Plan. & Cost Allocation,*
    Order No. 1920, 187 FERC 61 (May 13, 2024) ...............................................1

*Chocolate Mfrs. Ass'n of U.S. v. Block,*
    755 F.2d 1098 (4th Cir. 1985)................................................................. 22

*Conn. Light & Power Co. v. FPC,*
    324 U.S. 515 (1945).................................................................14

*Connecticut Department of Public Utility Control v. FERC,*
    569 F.3d 477 (D.C. Cir. 2009) .........................................................13

*El Paso Elec. Co. v. FERC,*
    76 F.4th 352 (5th Cir. 2023)...........................................................19

*Entergy Ark., LLC v. FERC,*
    134 F.4th 576 (D.C. Cir. 2025).......................................................... 2

*Env't Integrity Project v. EPA,*
    425 F.3d 992 (D.C. Cir. 2005) .............................................................22, 24

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000).................................................................12

*FERC v. Electric Power Supply Association,*
    577 U.S. 260 (2016)..................................................... *passim*

*FPC v. La. Power & Light Co.,*
    406 U.S. 621 (1972).................................................................14

*ICC v. FERC,*
    576 F.3d 470 (7th Cir. 2009)...........................................................7

v

*ICC v. FERC III*,
   756 F.3d 556 (7th Cir. 2014) ...................................................................7

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin*,
   407 F.3d 1250 (D.C. Cir. 2005) ....................................................22, 24

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ................................................................................ 2

*Morpho Detection, Inc. v. TSA*,
   717 F.3d 975 (D.C. Cir. 2013) .............................................................. 11

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.
   Co.*, 463 U.S. 29 .................................................................................. 20

*Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*,
   964 F.3d 1177 (D.C. Cir. 2020) ...................................... 2, 3-4, 13

*NextEra Energy Resources, LLC v. FERC*,
   118 F.4th 361 (D.C. Cir. 2024) ............................................................ 13

*Ohio v. EPA*,
   603 U.S. 279 (2024) .............................................................................. 21

*Paul v. United States*,
   589 U.S. 1087 (2019) ............................................................................ 16

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ................................................................................ 9

*S.C. Pub. Serv. Auth. v. FERC*,
   762 F.3d 41 (D.C. Cir. 2014) ........................................................... 2, 18

*Shelby County v. Holder*,
   570 U.S. 529 (2013) .............................................................................. 17

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) ...............................................................3

*Tex. E. Transmission Corp. v. FERC*,
   102 F.3d 174 (5th Cir. 1996) ................................................................ 19

*Transmission Access Pol'y Study Grp. v. FERC*,
   225 F. 3d 667, 688 (D.C. Cir. 2000) .................................................... 17

*Transmission Agency of N. Cal. v. FERC*,
   495 F.3d 663 (D.C. Cir. 2007) ...............................................................3

*Util. Air. Regul. Grp. v. EPA*,
   573 U.S. 302 (2014) .............................................................................. 15

*Vistra Corp. v. FERC,*
    80 F.4th 302 (D.C. Cir. 2023) ......................................................... 20
*West Virginia v. EPA,*
    597 U.S. 697 (2022)........................................................................15, 16
*Wisconsin Gas Co. v. FERC,*
    770 F.2d 1144 (D.C. Cir. 1985) .................................................... 17

**Statutes:**

16 U.S.C.
    § 824.....................................................................................................1
    § 824(a) .........................................................................................1, 9, 14
    § 824(b) .................................................................................................9
    § 824(b)(1)......................................................................................5, 10, 11
    § 824d(a)............................................................................................ 19
    § 824e(a).................................................................................... 10, 17, 18
5 U.S.C. § 706(2)(E).................................................................... 18, 19

## Argument in Reply

The Federal Power Act draws a jurisdictional line between the regulation of transmission and generation, granting the FERC authority over the former while prohibiting FERC from interfering with the States' traditional and exclusive authority over the latter. 16 U.S.C. §§ 824, 824(a). *Building for the Future Through Elec. Reg'l Transmission Plan. & Cost Allocation*, Order No. 1920, 187 FERC ¶ 61,068 (May 13, 2024). Order 1920 mandates transmission planning factors and benefits metrics that shifts transmission from being responsive to state generation choices to dictating those choices. By directing transmission planning (and thus building) based on long-term predictions of future generation, these predictions become a self-fulfilling prophecy, subsidizing certain forms of generation and penalizing others, trespassing on the exclusive authority reserved to the States. FERC is attempting to do indirectly what it is not authorized to do directly under the FPA.

FERC reads the "affecting" clauses in the FPA as nullifying any limitations on its jurisdiction. In its view, any effects transmission choices have on generation are irrelevant. But if FERC were correct, it could choose, for example, to refuse to build the transmission facilities necessary for renewable generation, eliminating certain forms of power as a state policy choice, because it was formally regulating transmission rather than generation.

Such a rule cannot be correct. FERC may exercise its statutory authority to protect against excessive prices and ensure the effective transmission of electric power, as it has done before. It need not, and statutorily cannot, regulate generation in the guise of transmission planning.

1

## I.   The State Petitioners Have Article III Standing to Challenge Order 1920.

While FERC focuses its standing argument on other petitioners, it suggests that the State Petitioners lack standing to challenge Order 1920 because they fail to explain how the rule, which is about long-term transmission development, "concretely and imminently harms their interests today." FERC Br. 10-11.

The administrative record demonstrates that the State Petitioners have standing.[1] Order 1920 implicates significant federalism and separation of powers concerns by usurping the States' power to regulate generation. The Rule causes injury to the States for which this Court can provide redress by setting it aside. The D.C. Circuit has already rejected similar arguments raised by FERC.[2] *Nat'l Ass'n of Regul. Util. Comm'rs v. FERC*, 964 F.3d 1177 (D.C. Cir. 2020).

To establish standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). In *National Association of Regulatory Utility Commissioners*, the petitioner was an association representing the interests of state utility commissions charged with regulating the electric utilities in their respective jurisdictions. 964 F.3d at 1185-86. The D.C.

---

[1] It appears that FERC suggests that State Petitioners have waived standing. FERC Br. 10 (citing *Entergy Ark., LLC v. FERC*, 134 F.4th 576, 581-83 (D.C. Cir. 2025)). But if FERC does, that case relied, in part, on the D.C. Circuit's Local Rule requiring a "standing" section for administrative review cases. Moreover, that court acknowledged that standing may be reasonably assumed if it is self-evident in the administrative record. *Entergy Ark. LLC*, 134 F.4th at 582.

[2] FERC concedes that the D.C. Circuit heard a challenge by utility providers to FERC's previous landmark rule on transmission planning after the petitioners briefed standing. *See* FERC Br. 12 (citing *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) (per curiam)).

Circuit held that the association had standing because it alleged that FERC lacked authority to prevent the state utility commissions from blocking certain energy resources from entering the market. The state utility commissions "plead[ed] an injury to their 'judicially cognizable interest in the preservation of [their] own sovereignty' at the hands of FERC." 964 F.3d at 1185 (second alteration in original) (quoting *Bowen v. Pub Agencies Opposed to Soc. Sec. Entrapment*, 477 U.S. 41, 50 n.17 (1986)).

In that case, a court order vacating the challenged orders and remanding to FERC to comply with the FPA's jurisdictional provisions would have redressed the claimed injury of improper intrusion upon the States' jurisdiction. 964 F.3d at 1185. The state utilities bore the operational burdens for delivering the energy to the market, and FERC's "refusal to adopt a framework" that provided state and local decisionmakers with greater flexibility over their facilities caused injury to the petitioners, which would have been redressed by an order vacating the challenged orders. *Id.*

In this case, the State Petitioners were active participants in the proceedings below, and their interests fall within the zone of interests protected by the FPA. *See Transmission Agency of N. Cal. v. FERC*, 495 F.3d 663, 669-70 (D.C. Cir. 2007). Because the States are an "object of the action" under review, there can be "little question" about their standing. *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002). Just like the state utility commissions in *National Association of Regulatory Utility Commissioners*, the State Petitioners have plead an injury to their "judicially cognizable interest in the preservation of [their] own sovereignty" at the hands of

FERC. 964 F.3d at 1185 (alteration in original) (quoting *Bowen*, 477 U.S. at 50 n. 17).

In particular, the State Petitioners allege that Order 1920 violates constitutional doctrines and exceeds the FPA's jurisdictional division of authority between the federal government and the States. FERC exceeding its jurisdiction harms State Petitioners now and not hypothetically in the future. 964 F.3d at 1185. The State Petitioners also challenged Order 1920 on the grounds that it constitutes an arbitrary and capricious agency action under the FPA and APA. 964 F.3d at 1185 (citing *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 442 (D.C. Cir. 2012)). The States are charged with responsibility for regulating their electric utilities, and the State Petitioners contend that Order 1920 infringes on their authority to regulate generation. An order from this Court vacating Order 1920 and remanding to FERC to comply with the FPA's jurisdictional and statutory provisions would redress the claimed injury.

## II. FERC Cannot Regulate Generation by Regulating Transmission.

FERC argues that Order 1920 does not regulate any state's generation decision because the order prescribes policies that govern only interstate transmission. FERC Br. 60-61. Moreover, according to FERC, even if Order 1920 impacts state generation policies, those policies do not divest FERC's exclusive authority over interstate transmission and practices that directly affect rates for such transmission. *Id.* Therefore, FERC avers that Order 1920 is inconsequential even if its actions may affect matters within the States' own jurisdiction. *Id.*

4

**A. Order 1920 directly affects generation rather than interstate transmission.**

FERC does not have jurisdiction over facilities used for generation of electric power. 16 U.S.C. § 824(b)(1). Order 1920's mandatory factors and benefits metrics require consideration and subsidization of attributes particular to certain types of generation in transmission system design, which encroaches the States' authority over generation.

FERC repeatedly claims that Order 1920 is generation resource neutral. FERC Br. 52-53, 88, 132-33. Not so. As demonstrated in the State Petitioners' opening brief, FERC is engaging in improper regulation of generation by compelling certain transmission necessary for renewable generation, such as wind and solar. Different forms of generation have different transmission needs, and FERC's new model of transmission planning will dictate what type of generation is built.

For planning and cost allocation purposes, all transmission projects are grouped into one "bucket" within a multi-state region, and Order 1920 requires transmission providers to use seven categories of factors as planning criteria. These mandatory factors include factors that involve generation sources, such as state and local laws affecting the resource mix, state and local laws on decarbonization, generation interconnection requests and withdrawals, and state and local policy goals. JA929-930 ¶ 409. As Commissioner Christie stated in his dissent, these "inputs" will "pre-cook" the outcome. JA1911 ¶ 8. These factors lead to the construction of transmission facilities to support certain favored generation choices because their subjects directly involve types of generation that are not traditional sources. Unlike traditional energy

sources, renewable power generation requires the planning of large transmission lines to move renewable generation from, for example, regions where wind is available and consistent to large load centers (for example, west to east in MISO), resulting in higher transmission costs because the power is generally transmitted across longer distances.

FERC argues that these factors only require transmission providers to "consider" the existence of these factors for transmission planning and there is no impact on generation. FERC Br. 87-88. Again, this is incorrect. The factors act as a self-fulling prophecy favoring renewable energy. First, the identification and consideration of the factors influence the recognition and identification of certain transmission needs, which lead to the identification and development of transmission facilities to meet those needs. The factors are not meaningless observations. A transmission planner's consideration of them has an assigned value in planning projects. Otherwise, there is no reason to consider these factors if they have no value.[3] As Commissioner Christie examined the connection between the factors and identification of transmission needs, Order 1920 directs that the "best available data inputs are data inputs that . . . reflect the *list of factors* that transmission providers account for in their Long-Term Scenarios," and "Long-Term Scenarios . . . incorporate various assumptions using best available data inputs about the future electric power system . . . *to identify Long-Term Transmission Needs* and enable the identification and

---

[3] In Order 1920-A, FERC removed "corporate-commitment" from one of the factors. If these factors are simple observations, there was no reason for FERC to remove this clause.

evaluation of transmission facilities to meet such transmission needs." JA1929-1930 ¶ 39 (quoting Order 1920).

Then, transmission planners assign value to factors promoting renewable energy because they include state and local laws and policy goals, including "decarbonization." Therefore, Commissioner Christie observed, "as the categories of factors are slanted toward transmission to facilitate preferred generation, the resulting output of the transmission planning process will inevitably have a similar bent." JA1930 ¶ 40. The factors are a self-fulfilling prophecy that begins the domino-effect toward FERC's preferred generation.

Order 1920 also mandates transmission providers to weigh seven benefits metrics in determining cost allocation, although it does not mandate how those benefits are weighed or calculated. JA1145 ¶ 729; JA1152-1216 ¶¶ 740-819. Importantly, FERC does not allocate costs within a multi-state region based on the costs of transmission projects but instead by the "benefits" received. JA1663-1664 ¶ 1505 (citing *ICC v. FERC*, 576 F.3d 470, 477 (7th Cir. 2009); *ICC v. FERC III*, 756 F.3d 556, 564 (7th Cir. 2014)). Order 1920 socializes costs of transmission by requiring States that favor traditional power generation to subsidize the development of infrastructure required to support States and localities that favor renewable methods of generation.

Consider two States located within the same region. State A's planning includes the construction of 75% traditional generation, such as natural gas, and 25% renewable energy. State B's laws require 100% renewable energy by 2040. Transmission providers will identify and apply Order 1920 factors that support renewable energy

7

to State B's transmission that supports this generation. And by mandating factors that favor renewable energy, Order 1920 requires all consumers within a multi-state region to be "involuntary" beneficiaries. Because State B's transmission costs are higher due to the renewable energy mandate or policies, the absolute dollars for transmission costs for State A and State B are higher than a scenario where both states have a 75% traditional/25% renewable split. Consumers in State A will be considered beneficiaries of the renewable generation in State B even though they did not support (or vote) for more expensive transmission infrastructure and related generation. Even though State B will receive greater credit for state renewable energy goals (benefits), its costs to consumers for related transmission will be dispersed among all States in the region. Increased transmission costs are subsidized by consumers in State A who will be forced to pay for transmission projects that support the development and purchase of preferential renewable energy mandated in State B.

FERC's jurisdiction to regulate practices affecting transmission rates does not erase the FPA's limitation on its regulation of generation. Order 1920 exceeds that limitation by requiring transmission that enables and favors certain renewable generation resources distant from loads to the detriment of traditional resources located closer to loads. To accomplish it, Order 1920 spreads those costs broadly, thus dictating the types of generation that will be built with this extensive, additional transmission infrastructure. Thus, FERC is directly regulating generation through renewable generation mandates characterized as transmission planning design criteria.

8

**B.** *FERC v. Electric Power Supply Association* **supports this conclusion.**

*FERC v. Electric Power Supply Association*, on which FERC relies heavily, is not to the contrary. 577 U.S. 260 (2016) (*EPSA*). In *EPSA*, the Supreme Court examined the jurisdictional division between FERC's authority over wholesale rates versus the States' authority over retail rates. The FERC order incentivized retail consumers to reduce consumption by providing incentives to the consumers with wholesale "demand response" compensation. EPSA argued that the order improperly regulated retail sales of energy because 16 U.S.C. § 824(b) provides that only the States can set retail rates.

In determining whether FERC exceeded its jurisdiction, the Supreme Court examined whether the challenged order: (1) directly affects a subject within FERC's jurisdiction (wholesale rates); (2) regulates state-regulated retail sales; and (3) imposes a contrary view that conflicts with the FPA's core purposes of curbing prices and enhancing reliability in the wholesale electricity market. *EPSA,* 577 U.S. at 276-77. Applied in this case, these factors confirm that Order 1920 exceeds FERC's jurisdiction.

**1. Order 1920 directly affects generation rather than interstate transmission.**

The FPA expressly confines all FERC's jurisdiction—including its "affecting" "jurisdiction"—"to those matters which are not subject to regulation by the States," 16 U.S.C. § 824(a). The "affecting" language does not erase this specific limit. *See generally*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645-46 (2012). As the Supreme Court cautioned: "FERC cannot take an action

9

transgressing that limit no matter how direct, or dramatic its impact on wholesale rates." *EPSA*, 577 U.S. at 280. Otherwise, FERC could engage in direct regulation of generation whenever it affects transmission of electric energy in interstate commerce. *Id.* at 280 (explaining that FERC could not issue a regulation compelling a certain amount of electricity on the retail market even though it would necessarily alter the wholesale prices because the FPA specifies that terms of sale at retail "is a job for the States alone").

FERC claims that Order 1920 "is *all about* interstate transmission and rate-related practices" and points to declaratory language in Order 1920. FERC Br. 81-83. No doubt, FERC has jurisdiction to regulate the transmission of electric energy in interstate commerce, *see* 16 U.S.C. § 824(b)(1). And that authority extends to regulations "affecting" FERC's jurisdiction, *see* 16 U.S.C. § 824e(a); *EPSA*, 577 U.S. at 277-78. But FERC's declaration in Order 1920 that it affects transmission alone cannot make it so. For the reasons outlined above in Section II.A., Order 1920 ventures outside FERC's jurisdiction.

FERC's argument also ignores the unique symbiotic relationship between wholesale and retail rates in *EPSA*, which is absent between transmission planning and generation. The Supreme Court recognized that there is a direct relationship between wholesale and retail rates because a change in one market necessarily changes the other. *EPSA*, 577 U.S. at 286. Constraints on generation, in contrast, are not a necessary consequence of the regulation of interstate transmission.

## 2. FERC's authority over transmission does not provide unlimited authority to regulate generation.

Order 1920 directly regulates generation, which is reserved to the States under 16 U.S.C. § 824(b)(1), by promoting and subsidizing transmission that supports specific generation sources promoted by some States. FERC did more than follow its own regulatory mission on interstate transmission. The rule imposes its regulatory agenda on certain politically preferred generation choices, not the most efficient or reliable. As the Supreme Court cautioned in *EPSA*, FERC cannot impose its regulatory agenda on state-jurisdictional matters. 577 U.S. at 287.

FERC claims that any effect on States' generation is of "no legal consequence" if FERC is regulating interstate transmission. FERC Br. 88. That is inherently true for wholesale and retail rates considered in *EPSA*: "It is a fact of economic life that the wholesale and retail markets in electricity, as in every other known product, are not hermetically sealed from each other." 577 U.S. at 281. But unlike the relationship between wholesale and retail rates, FERC can regulate interstate transmission without affecting, much less regulating generation.

In fact, FERC's argument has no limiting principle. *Morpho Detection, Inc. v. TSA*, 717 F.3d 975, 981 (D.C. Cir. 2013) (declining to "adopt a reading that would so render the . . . general rule a nullity"). As the Supreme Court observed in *EPSA*, this Court should adopt a reading "to prevent the statute from assuming near-infinite breadth." *EPSA*, 577 U.S. at 278. In this case, FERC's interpretation of its authority would expand it to near-infinite breadth, permitting it to intrude on areas reserved to the States so long as it roots those generation-affecting consequences in an interstate-

11

transmission regulation. That radical reinterpretation of the FPA is "inconsistent with the administrative structure that Congress enacted into law." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000). FERC cannot regulate generation by relying on the truism that transmission affects generation, and its jurisdiction to regulate practices affecting transmission rates does not erase the FPA's limitation on its regulation of generation. Order 1920 exceeds that limitation by designing transmission that dictates types of generation.

FERC's reliance on *EPSA* is further misguided because the Supreme Court highlighted the cooperative federalism in that rule which allowed any State regulator to prohibit its customers from making demand response bids in the wholesale market, which gave the States "veto power" to block increases in retail rates from demand response programs. 577 U.S. at 287-88 ("Wholesale demand response as implemented in the Rule is a program of cooperative federalism, in which the States retain the last word."). Order 1920 provides no such "veto" power for the States. JA1950-1951 ¶ 76 (FERC removing state consent requirements in the final rule).

### 3. Order 1920 implements a regulatory agenda rather than addressing price and reliability.

On the third *EPSA* factor, FERC claims that Order 1920 does not conflict with the FPA's purposes of curbing prices and enhancing reliability. FERC Br. 95. However, Order 1920 is not about curbing prices and enhancing reliability but implementing a regulatory agenda subsidizing certain generation choices by some States. Moreover, unlike the scenario the Supreme Court considered in *EPSA*, limiting

12

FERC to regulation of interstate transmission would not create a "no man's land" where neither FERC nor the States could regulate. 577 U.S. at 288-89.

Instead, rejecting Order 1920 will maintain the State's traditional authority over generation.

### C. The States' exercise of authority over generation does not act as a barrier to FERC's regulation of transmission.

Additional legal authority cited by FERC is inapposite because it involves States creating barriers to the interstate market through its regulation of generation.

For example, in *NextEra Energy Resources, LLC v. FERC*, the court allowed FERC to require a generator to upgrade its circuit breaker because additional generation was unable to connect to the grid until this generator upgraded, and "the entire grid would be left vulnerable to widespread outages from fault currents." 118 F.4th 361, 369 (D.C. Cir. 2024). In supporting FERC's regulation, the court also relied on a contractual agreement where the generator had agreed to upkeep its facility, including upgrades. *Id.* at 369-72.

And in *National Association of Regulatory Utility Commissioners*, 964 F.3d 1177, the court upheld FERC's regulation of electric storage resources where States had banned these sources. The court found that these were barriers to competition where certain States constrained competition by preventing these energy sources from entering federally-controlled markets.

In another case FERC relies on, *Connecticut Department of Public Utility Control v. FERC*, 569 F.3d 477 (D.C. Cir. 2009), the court upheld FERC's jurisdiction to approve an "installed capacity requirement", finding that it was not an

impermissible intrusion. As the court noted, the ICR was "woefully misnamed" because it did not "actually 'require' anyone to 'install' any new 'capacity' at all." 569 F.3d at 481 (citation omitted). FERC had authority to regulate capacity charges, including setting a target for capacity demand and using the market to locate the appropriate price. *Id.* at 482. Here, in contrast, FERC is not regulating interstate transmission or rates but directly regulating generation.

Finally, FERC argues that the State Petitioners' position violates the Supremacy Clause. FERC Br. 93-95. But FERC disregards that Congress expressly resolved any conflict in favor of the States by limiting FERC's jurisdiction to "matters which are not subject to regulation by the States," 16 U.S.C. § 824(a). Giving effect to the statute passed by Congress, as the Supremacy Clause mandates, requires courts to enforce the limits on FERC's jurisdiction and protect the States against its encroachment.

FERC's position is nothing more than a disagreement with Congress's decision to bifurcate jurisdiction over transmission and generation. Even a professed "need for federal regulation does not establish . . . jurisdiction that Congress has not granted." *FPC v. La. Power & Light Co.*, 406 U.S. 621, 635-36 (1972). This Court should enforce Congress's division of jurisdiction between FERC and the States. *Conn. Light & Power Co. v. FPC*, 324 U.S. 515, 530 (1945).

## III. Constitutional Doctrines Involving Federalism and Separation of Powers Principles Invalidate Order 1920.

Even assuming congressional authorization, Order 1920 violates constitutional doctrines. Given the economic and political magnitude of Order 1920, the major-

14

questions doctrine allows FERC to issue Order 1920 only with clear authorization. As demonstrated, not only does the FPA not allow FERC to regulate generation, it forbids it. FERC concedes that Order 1920 is of "economic and political significance," FERC Br. 103-104, but argues that the major-questions doctrine does not apply because Congress granted it broad authority to regulate interstate transmission.

But as detailed above, the FPA does not provide "clear congressional authorization" for FERC to mandate a single set of transmission planning assumptions that directly affect and promote certain methods of generation. Order 1920 involves an agency interpretation beyond what Congress intended.

FERC suggests that agency actions invalidated by courts under the major-questions doctrine involved an agency's expansion of its regulatory power beyond subject matter it routinely regulates. FERC Br. 98-100, 102-03 (citing *West Virginia v. EPA*, *Util. Air. Regul. Corp. v. EPA*, and *Biden v. Nebraska*). That is incorrect. These cases generally involved an agency's rule within a subject matter of its "expertise"; the dispositive issue was that the challenged action was without clear congressional authorization. In *West Virginia*, the Court held that Congress did not grant the EPA the authority to devise certain emission caps relating to power plant emissions under the Clean Air Act. *West Virginia v. EPA*, 597 U.S. 697 (2022). And in *Utility Air Regulatory Group*, the Court invalidated the EPA's decision to regulate greenhouse-gas emissions under the Clean Air Act by adjusting permitting requirements. *Util. Air. Regul. Grp. v. EPA*, 573 U.S. 302 (2014). Finally, in *Biden v. Nebraska*, the Court found that the Secretary of Education did not have authority under the Higher Education Relief Opportunities for Students Act to issue waivers and modifications

15

to reduce or eliminate federal student debt of borrowers. *Biden v. Nebraska*, 600 U.S. 477 (2023).

FERC's shift to use long-term transmission planning represents a significant departure from the existing system, particularly when the costs would be astronomical. JA1901-1902 ¶ 1 (noting the order would impose its mandate on "every transmission provider in the United States for the transparent goal of spending trillions of consumers' dollars on transmission"); *see also* JA1903 ¶ 3 n.7; JA1912 ¶ 9. FERC adopted a radical reimagining of the FPA that allows FERC to become a national Integrated Resource Planner, and the major-questions doctrine applies.

On the non-delegation doctrine, FERC argues that Congress' grant of authority to FERC under the FPA includes the requisite intelligible principle and that the Supreme Court held that agencies may exercise policy authority of "great magnitude and consequence" so long as Congress provides "a clear delegation" of such power. FERC Br. 106 (citing *West Virginia*).

In this case, because of important federalism and separation of powers issues, the Constitution prohibits delegation of these major policy questions to FERC, even if it were authorized by Congress. *See Paul v. United States*, 589 U.S. 1087, 1087 (2019) (Kavanaugh, J., statement respecting denial of certiorari) (noting that it may be unconstitutional for an executive or agency to exercise authority over a major policy question even if Congress delegates that authority).

Finally, Order 1920 implicates the equal sovereignty doctrine by forcing some States to subsidize other States' generation choices. As the Supreme Court held, the equal sovereignty doctrine is relevant in considering disparate treatment among the

16

States. *Shelby County v. Holder*, 570 U.S. 529, 544 (2013). Order 1920's improper regulation of generation leads to the subsidization of costs by some States to others, which would cause disparate and unequal treatment.

## IV. FERC failed to establish that existing transmission was deficient under the FPA, while also failing to establish that the replacement was reasonable.

Even if FERC had statutory and constitutional authority to execute Order 1920, it was arbitrary and capricious. FERC failed to provide substantial evidence supporting its finding that existing rates are unjust, unreasonable, or unduly discriminatory or preferential and that the replacement is reasonable. 16 U.S.C. § 824e(a).

### A. FERC's nationwide generic rulemaking is unreasonable without sufficient supporting evidence.

In establishing that the existing transmission planning and cost allocation processes violate the FPA, FERC cannot rely solely on "unsupported or abstract allegations," and the agency's factual determinations must be reasonable. *See Transmission Access Pol'y Study Grp. v. FERC*, 225 F.3d 667, 688 (D.C. Cir. 2000) (per curiam) (citing *Wisconsin Gas Co. v. FERC*, 770 F.2d 1144, 1158 (D.C. Cir. 1985)). In *Wisconsin Gas*, the court held that while FERC was not required to make specific findings that individual rates charged by individual pipelines were unlawful, or to offer empirical proof for all the propositions upon which its order depended, unsupported or abstract allegations of the benefits are not enough to promulgate a generic rule. *See Wisconsin Gas*, 770 F.2d at 1158.

Here, the State Petitioners demonstrated that FERC's reliance on a generic nationwide rule was unsupported because the record only showed that the alleged

17

planning deficiencies existed in isolated pockets. States Br. 42-43 (*contra* FERC Br. 127-29). The State Petitioners cited examples of successful regional transmission planning in large geographical areas throughout the country. *Id.* FERC argues that it has the authority to promulgate a nationwide generic rule without making specific findings about the rates charged by specific utilities. FERC Br. 124-26. The State Petitioners do not deny that nationwide rulemakings exist and can be an appropriate path for resolving certain issues with broad implications. However, the rulemaking path does not absolve FERC from supporting its findings with sufficient evidence.

Indeed, FERC acknowledges that a nationwide remedy may be inappropriate if the alleged problem exists only in isolated pockets. FERC Br. 127 (citing *S.C. Pub. Serv. Auth.*, 762 F.3d at 67). In addition, FERC suggests that the State Petitioners have the burden to demonstrate that the deficiencies exist in those isolated areas. *Id*. But FERC has the obligation to support its rule. *S.C. Pub. Serv. Auth.,* 762 F.3d at 54, 67 (holding that FERC had adequately explained why existing transmission planning and cost allocation practices were inadequate); *see also* 5 U.S.C. § 706(2)(E). And even if the State Petitioners had the burden, they provided overwhelming evidence that the alleged problem existed only in isolated pockets and was not nationwide because large geographical areas were already engaged in transmission planning. States Br. 42-44.

## B. Order 1920's replacement rate is unreasonable.

Even if FERC could establish that existing transmission planning violated the FPA, it still must establish by substantial evidence that its replacement is just and reasonable and not unduly discriminatory or preferential. 16 U.S.C. § 824e(a); 5

18

U.S.C. § 706(2)(E). As the State Petitioners have already explained, Order 1920 is an attempt by FERC to do indirectly what it is not authorized to do directly under the FPA; dictate generation resources to be used by building transmission to move generation resources to other customers and socialize those transmission costs.

FERC claims that Order 1920 is not discriminatory because the planning criteria do not favor and subsidize certain types of generation. FERC Br. 132. In addition, although FERC argues that it does not matter whether the metrics are unclear because States will have the opportunity to object in the future after compliance filings by transmission providers, FERC Br. 136, FERC has a statutory obligation to adopt rates that are just and reasonable at the outset that are not arbitrary and capricious. 16 U.S.C. § 824d(a). Providing rules that are subject to broad interpretation and allowing transmission providers to arbitrarily implement those rules does not meet the just and reasonable and arbitrary and capricious standards. Those rules are the filed rate and may be changed prospectively only. *Tex. E. Transmission Corp. v. FERC*, 102 F.3d 174, 183 (5th Cir. 1996). Simply allowing the States to object during the compliance filing process does not provide an adequate remedy. *See El Paso Elec. Co. v. FERC*, 76 F.4th 352, 366 (5th Cir. 2023).

Relating to the measurement-of-the-benefit metrics, FERC argues that the State Petitioners forfeited the argument because they only raised a double-counting issue before the agency. FERC Br. 135. However, the State Petitioners argued before the agency that the metrics are unclear and could not be accurate or measurable, which, for example, could lead to double-counting. JA5344; JA5365 States Pet. ("Benefit

19

metrics should be accurate and measurable and not overvalue the proposed transmission projects.").

On substance, FERC suggests that these benefit buckets are distinct and measurable. They are not. Because the benefit metrics are so broadly drafted, they overlap and create the potential for double counting purported benefits. Many transmission projects can have reliability, economic, and capacity benefits that cannot be measured with certainty. For example, there is no certain way to distinguish the reliability benefits in category (2) reduced loss of load probability or reduced planning reserve margin from the capacity benefits in category (7) capacity cost benefits from reduced peak energy losses. FERC never explained how those categories can be measured or how the benefits are distinct.

Further, FERC defends its use of the portfolio approach because it is "intelligibly explained" by some commenters who approve its use. FERC Br. 136-39. However, allowing and encouraging the portfolio approach to evaluate the benefits of transmission is designed to manufacture fictitious benefits for projects that would not be beneficial individually. JA1248-1249 ¶ 871. FERC is required to adequately explain its selection between competing proposals. *Vistra Corp. v. FERC*, 80 F.4th 302, 313 (D.C. Cir. 2023) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43) (FERC is required to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'").

Here, FERC failed to explain why it was just and reasonable to allow construction of transmission lines with costs that exceed benefits. FERC recognizes that a

portfolio evaluation may not always be appropriate, but claims that portfolios create administrative efficiencies, economies of scale, and a more stable distribution of benefits. JA2357-2358 ¶ 432. This explanation is merely stating that there could be less paperwork if projects are approved in groups and that if more transmission miles are built, there could be a lower cost per transmission unit. While that may be correct, it does not provide justification to approve construction of uneconomic projects because other more worthy projects have excessive benefits. Constructing more projects with positive benefit-to-cost ratios would also promote administrative efficiencies and economies of scale.

FERC also exhibited other lapses in reasoned decision making. While FERC chose to reform local transmission projects, it ignored a critical problem in that area: namely, lack of oversight for the transmission owners who choose which local projects to undertake. States Br. 48–50. FERC talks past this regulatory gap, suggesting that it might consider the issue later. FERC Br. 231–32. But reasoned decision making requires agencies to do more than brush aside problems. Regulators that undertake reform must meaningfully consider important issues identified during rulemaking. *See Ohio v. EPA*, 603 U.S. 279, 294 (2024). FERC failed to do so here.

FERC's defense of its 20-year planning timeline likewise falls flat. That mandatory timeline offers another sign that FERC's true goal here is favoring certain generation choices, not ensuring just-and-reasonable rates. FERC asks for unblinking deference to its decision. FERC Br. 139–41. But FERC fails to address how recent technological developments—such as horizontal drilling and hydraulic

21

fracturing—demonstrate the unreasonableness of its inflexible approach. States Br. 47–48.

## V. Order 1920 Is Not a Logical Outgrowth of FERC's Original Proposal.

An agency may "substantially" depart from the original proposal, FERC Br. 180, but the changes must be "in character" and a logical outgrowth of the notice and comments. *Am. Paper Inst. v. EPA*, 660 F.2d 954, 959 n.13 (4th Cir. 1981); *see also Chocolate Mfrs. Ass'n of U.S. v. Block*, 755 F.2d 1098, 1105 (4th Cir. 1985) ("[I]f the final rule 'substantially departs from the terms or substance of the proposed rule,' the notice is inadequate.") (citation omitted). Order 1920 is not a logical outgrowth because it radically changed from the NOPR.

FERC attempts to downplay the substantial departures between the NOPR and Order 1920 by claiming that they were necessary to improve the rule. Although an agency may provide changes between the NOPR and final rule, the changes are not a logical outgrowth if the final rule is "more expansive, more specific, and having a different emphasis in the regulatory structure." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin,* 407 F.3d 1250, 1260 (D.C. Cir. 2005); *see also Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005) ("Thus, we have refused to allow agencies to use the rulemaking process to pull a surprise switcheroo on regulated entities.").

As an initial matter, FERC is wrong to suggest that the State Petitioners waived argument that Order 1920 is not a "logical outgrowth" of the notice of proposed rulemaking. FERC Br. 181-82. To the contrary, the State Petitioners' opening brief explains the negative impacts and refers to previous argument on how the

factors and elimination of the state consent agreement was unjust and unreasonable. States Br. 55. Therefore, there is no question about the State Petitioners' position on the factors and state consent issue.

Regarding the argument, the State Petitioners could not have anticipated the substantial departures from the NOPR, which were not in the character of the original scheme. FERC contends that the NOPR did not require state consent so no notice of the removal of this requirement was required. FERC Br. 183. Not so. The NOPR established the proposal for a state consent requirement in transmission planning.[4] Commissioner Christie recognized this change in his dissent. JA1909 ¶ 6; JA1912-1916 ¶¶ 10-13; JA1924 ¶ 27. Order 1920's provision for a State to submit its position in the transmission planning process—where it might be easy to ignore—rather than requiring state consent is completely different than the proposed rule.

In addition to this "surprise switcheroo" regarding state consent, FERC performed a substantial departure when it left the existing Construction Incentive intact after proposing to eliminate it. FERC contends that merely including its position on a subject matter in the NOPR provides commenters with a fair opportunity to present their views on the issue if FERC ultimately takes the opposite position in the final rule. FERC Br. 186. Courts have rejected this argument. "[A]n unexpressed intention cannot convert a final rule into a 'logical outgrowth' that the public should have anticipated." *Intl. Union, United Mine Workers of Am.*, 407 F.3d at 1260 (citations

---

[4] JA382-383 ¶ 303 (emphasis added) ("We seek comment . . . recognizing a State Agreement Process or combination cost allocation method would not comply with this proposed rule ***unless the relevant public utility transmission providers has obtained agreement from the relevant state entities***.")

omitted). In a similar scenario, the court rejected EPA's argument that it met its notice-and-comment obligations because its final rule was mentioned in the proposal, although negatively. *Envt'l Integrity Project*, 425 F.3d at 998. The court held that the EPA's argument "proves too much" because a "reasonable commenter must be able to trust an agency's representations about *which particular* aspects of its proposal are open for consideration." *Id.* A contrary rule would allow an agency to reject innumerable alternatives in the NOPR only to justify any final rule by picking and choosing within four corners of a lengthy notice. *Id.* Here, the State Petitioners and other commenters had no notice or opportunity to comment on the retention of the incentive since the NOPR proposed its removal. Commenters could not assume, as FERC contends, that FERC would follow the opposite course when the NOPR provided no indication that it would not eliminate the incentive. Indeed, the various filings to the NOPR do not appear to contain comments regarding the removal of the incentive. A complete turnabout from the NOPR is not a logical outgrowth.

Finally, FERC disputes the States Petitioners' contention that Order 1920 does not address a fundamental tenet of the NOPR: to expand the transparency goals in local transmission planning. FERC Br. 187. FERC contends that the NOPR did not propose applying local transparency reforms to cover asset management projects. But the NOPR did propose applying local transparency reforms that had a significant impact on the overall transmission process.[5] The NOPR then proposed addressing

---

[5] JA451 ¶ 398 ("We are concerned that the lack of minimal standards or specified procedures to implement these principles may contribute to inadequate transparency and opportunities for stakeholders to engage in local transmission planning processes").

24

these issues in the final rule.[6] This failure to address a core tenent of the NOPR is not a logical outgrowth of the NOPR.[7]

## Conclusion

For these reasons, this Court should grant the States Petitioners' petition for review and vacate Order 1920.

|  | SUBMITTED BY: |
|---|---|
| Ken Paxton<br>Attorney General of Texas | William R. Peterson<br>Solicitor General |
| Brent Webster<br>First Assistant Attorney General | William F. Cole<br>Principal Deputy Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | /s/ *Dimitri N. Rocha*<br>DIMITRI N. ROCHA<br>Assistant Solicitor General<br>Dimitri.Rocha@oag.texas.gov |
|  | ***Counsel for the State of Texas*** |

---

[6] JA455 ¶ 400 (requiring transmission providers to revise process to include provisions to enhance transparency).

[7] Arizona Corporation Commission ("ACC") raised this issue in its June 12, 2024 request for rehearing. *See* ACC Request for Rehearing. JA5193-5194.

Thomas Van Flein
General Counsel

Sean Bodkin
Senior Associate General Counsel

Maureen A. Scott
Senior Associate General Counsel

Chief of Litigation & Appeals
Office of the General Counsel
Arizona Corporation Commission
1200 West Washington Street
Phoenix, Arizona 85007
(602) 542-3402
tvanflein@azcc.gov
mscott@azcc.gov
*Counsel for the State of Arizona Corporation Commission*

Russell Coleman
Attorney General

Matthew F. Kuhn
Solicitor General

John H. Heyburn
Principal Deputy Solicitor General

Jacob M. Abrahamson
Deputy Solicitor General

Office of the Kentucky Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jack.Heyburn@ky.gov
Jacob.Abrahamson@ky.gov

*Counsel for the Commonwealth of Kentucky*

William D. Booth

Alex Peterson

Michael Best & Friedrich LLP
1000 Maine Avenue, S.W. Suite 400
Washington, D.C. 20024
(202) 747-9560
wdbooth@michaelbest.com
alpeterson@michaelbest.com

*Counsel for the State of Mississippi Public Service Commission*

Stanford Purser
Utah Solicitor General

Office of the Utah Attorney General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
(801) 366-0100
spurser@agutah.gov

*Counsel for the State of Utah*

*Additional counsel on next page*

26

Christopher M. Carr
Attorney General

John Henry Thompson
Solicitor General

Elijah O'Kelley
Deputy Solicitor General

Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

***Counsel for the State of Georgia &
Georgia Public Service Commission***


Kathryn Bowman
Executive Counsel

Louisiana Public Service Commission
Galvez Building - 12th Floor
602 N. Fifth Street
Baton Rouge, Louisiana 70802
(225) 342-9888

Mathura J. Sridharan*
Solicitor General
*Counsel of Record

Zachery P. Keller
Deputy Solicitor General

Thomas G. Lindgren
Assistant Attorney General

30 East Broad Street, 17th Floor
Columbus, Ohio 43215
(614) 466-8980
Mathura.Sridharan@OhioAGO.gov

***Counsel for the Public Utilities
Commission of Ohio's Office of the
Federal Energy Advocate***

Noel J. Darce

Dana M. Shelton

Justin A. Swaim

Fishman Haygood, LLP
201 St. Charles Ave., Suite 4600
New Orleans, Louisiana 70170
(504) 586-5252

***Counsel for the State of the
Louisiana Public Service
Commission***

27

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. 24-1650(L)    Caption: APPALACHIAN VOICES, ET AL v. FERC

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑    this brief or other document contains _____6,441_____ [*state number of*] words

☐    this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

☑    this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word_____ [*identify word processing program*] in
Times New Roman_____ [*identify font, size, and type style*];

**or**

☐    this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) Dimitri N. Rocha_____

Party Name STATE PETITIONERS_____        Date: 3/13/2026_____

12/09/2024 NA/MEO

# CERTIFICATE OF SERVICE

**Instructions for Electronic Filers:** For persons filing electronically, CM/ECF serves all registered CM/ECF users, and no certificate of service is required for such service.  A certificate of service is required from an electronic filer, however, in the following circumstances:

- To certify that a non-user of CM/ECF has been served;
- To certify that a manual filing (not available in electronic form), has been served;
- To certify that a sealed document has been served;
- To certify that a case-initiating document, such as a petition for review, petition for permission to appeal, or petition for writ of mandamus, has been served.

**Instructions for Paper Filers:** For persons filing in paper form, service must be accomplished outside CM/ECF, and a certificate of service is required for all documents.

Case No.  24-1650(L)    Case Caption  APPALACHIAN VOICES, ET AL v. FERC

I certify that on ___3/13/2026___, the  REPLY BRIEF FOR STATE PETITIONERS
                    (date)                              (document title)
was served by [ ] personal delivery; [ ] mail; [ ] third-party commercial carrier; or [ ] email

(with written consent) on the following persons at the addresses or email addresses shown:

(Name and Address or Email Address )
 Service provided electronically by CM/ECF

Dimitri N. Rocha                                          3/13/2026
Signature                                                   Date

01/28/2020 SCC